Case No. 23-10459

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ANDREW WARREN,

Plaintiff–Appellant,

v.

RON DESANTIS,

Defendant–Appellee.

## APPELLANT'S MOTION TO EXPEDITE APPEAL

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
No. 4:22cv302-RH-MAF

David A. O'Neil
DEBEVOISE & PLIMPTON, LLP
801 Pennsylvania Ave. NW,
Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

Jean-Jacques Cabou
Alexis E. Danneman
PERKINS COIE LLP
2901 N. Central Avenue, Suite
2000
Phoenix, Arizona 85012
(602) 351-8000
JCabou@perkinscoie.com
ADanneman@perkinscoie.com

David B. Singer
Matthew T. Newton
OLDER, LUNDY, KOCH &
MARTINO
1000 W. Cass St.
Tampa, FL 33606
(813) 254-8998
dsinger@olderlundylaw.com
mnewton@olderlundylaw.com

*Counsel for Plaintiff-Appellant Andrew Warren*

*Warren v. DeSantis*
DOCKET NO. 23-10459

## CERTIFICATE OF INTERESTED PERSONS

Plaintiff-Appellant certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Aaron, Jeffrey M., *Attorney for Defendant-Appellee*

2. Cabou, Jean-Jacques, *Attorney for Plaintiff-Appellant*

3. Casselman, Margo R., *Attorney for Plaintiff-Appellant*

4. Christmas, Natalie, *Attorney for Defendant-Appellee*

5. Costello, David M., *Attorney for Defendant-Appellee*

6. Danneman, Alexis, *Attorney for Plaintiff-Appellant*

7. Debevoise & Plimpton, LLP, *Attorneys for Plaintiff-Appellant*

8. DeSantis, Ron, *Defendant-Appellee*

9. DeSousa, Jeffrey P., *Attorney for Defendant-Appellee*

C-1 of 3

10. Florida Office of the Attorney General, *Attorneys for Defendant-Appellee*

11. Gray Robinson, P.A., *Attorneys for Defendant-Appellee*

12. Grouev, Zachary, *Attorney for Defendant-Appellee*

13. Hinkle, Robert L., *District Court Judge*

14. Levesque, George T., *Attorney for Defendant-Appellee*

15. Lopez, Susan, *Interested Party*

16. Moody, Ashley, *Attorney for Defendant-Appellee*

17. Newton, Matthew T., *Attorney for Plaintiff-Appellant*

18. Older, Lundy, Koch & Martino, *Attorneys for Plaintiff-Appellant*

19. O'Neil, David A., *Attorney for Plaintiff-Appellant*

20. Percival, James H., *Attorney for Defendant-Appellee*

21. Perkins Coie LLP, *Attorneys for Plaintiff-Appellant*

22. Schenck, Robert S., *Attorney for Defendant-Appellee*

23. Singer, David B., *Attorney for Plaintiff-Appellant*

24. Singh, Samantha B., *Attorney for Plaintiff-Appellant*

25. Swain, Alexandra P., *Attorney for Plaintiff-Appellant*

26. Warren, Andrew, *Plaintiff-Appellant*

27. Whitaker, Henry C., *Attorney for Defendant-Appellee*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: February 14, 2023

DEBEVOISE & PLIMPTON LLP

*/s/ David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant*
*Andrew Warren*

## TABLE OF CONTENTS

MOTION TO EXPEDITE APPEAL ........................................................................1

PRELIMINARY STATEMENT .............................................................................1

BACKGROUND ...................................................................................................3

    I.    Mr. Warren Was Twice Elected State Attorney as a Reform Advocate ........3

    II.   Governor DeSantis Illegally Suspended Mr. Warren in Retaliation for
His Protected Speech ...........................................................................................4

    III.   The District Court Ordered Expedited Proceedings and Ruled the
Suspension Unlawful ...........................................................................................6

    IV.   Governor DeSantis Has Refused to Follow the Law ...................................8

ARGUMENT ........................................................................................................9

    I.    The Significant Public Interests at Stake Require Expeditious
Resolution ...........................................................................................................10

    II.   The Issues Presented Are Appropriate for Expedited Resolution.................14

CONCLUSION ....................................................................................................16

PROPOSED SCHEDULE ....................................................................................17

i

# TABLE OF AUTHORITIES

## Cases

*Bond v. Floyd*, 385 U.S. 116 (1966) ..........................................................................12

*Brown v. Sec'y of State*, 668 F.3d 1271 (11th Cir. 2012)........................................11

*Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (2022)............................4

*Duke v. Cleland*, 954 F.2d 1526 (11th Cir. 1992) ............................................11, 12

*Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018).......................................................11

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018)........................................12

*Jones v. DeSantis,* No. 19-14551-GG (11th Cir. Dec. 5, 2019) .............................10

*McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.,*
    373 U.S. 668 (1963) .........................................................................................15

*Monroe v. Pape,* 365 U.S. 167, 183 (1961) .............................................................15

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274
    (1977)................................................................................................................14

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020).....................................12

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002)......................................13

*TGP Commc'ns., LLC v. Sellers*, 2022 U.S. App. LEXIS 33641 (9th
    Cir. Nov. 30, 2022) ...........................................................................................12

*Trump v. U.S.*, No. 22-13005, 2022 WL 4366684 (11th Cir. Sept. 21,
    2022) ..........................................................................................................14, 15

*Warren v. DeSantis*, No. 4:22cv302-RH-MAF (Jan. 20, 2023) ..........1, 3, 4, 5, 7, 10

*Wood v. Georgia,* 370 U.S. 375 (1962) ...................................................................13

## Statutes

42 U.S.C § 1983 ........................................................................................................6

**Other Authorities**

11th Cir. R. 27-1, IOP 3 ................................................................................9

Fla. Const. Art. IV, § 7(a) ............................................................................6

Fla. Const. Art. V, § 17 ............................................................................9, 10

U.S. Const. amend. I. ........................................... 1, 2, 6, 8, 11, 12, 14, 15

U.S. Const. amend. XI ................................................................................8

## MOTION TO EXPEDITE APPEAL

For the reasons set forth in this Motion, Plaintiff-Appellant, Andrew H. Warren moves, pursuant to Federal Rule of Appellate Procedure 27, and this Court's Internal Operating Procedure 27.3, for expedited consideration of this appeal from the Order issued on January 20, 2023 by the U.S. District Court for the Northern District of Florida. *See* ECF No. 150 (the "Order").[1]

## PRELIMINARY STATEMENT

This case concerns the illegal attempt by Governor Ron DeSantis to nullify the results of two elections in violation of both the Florida and Federal Constitutions. On August 4, 2022, DeSantis announced that he was suspending Appellant from his constitutional office as the chief state law enforcement officer for Hillsborough County, Florida, because Appellant had signed statements expressing viewpoints that, according to DeSantis, displayed "neglect of duty" and "incompetence." Following expedited discovery and trial, a federal district court rejected that conclusion, ruling that DeSantis' action violated both Florida law and the First Amendment. The court declined to reinstate Appellant, however, on the erroneous ground that it could not order injunctive relief.

---

[1] All citations to "ECF" are to the district court's docket, *Warren v. DeSantis*, No. 4:22cv302-RH-MAF (N.D. Fla).

There is good cause to expedite this appeal.  It involves an event of profound significance to the public: The Governor canceled the votes of hundreds of thousands of Floridians, removed a high-level government official twice elected to his constitutional office, replaced that official with another who had never received a single vote, and did so based on an assertion of constitutional authority that a federal court has now deemed illegal under both state and federal law.  As the district court noted in ordering expedited proceedings below, the public needs resolution at the earliest possible opportunity of whether the Governor illegally removed the duly elected chief prosecutor in the State's third most populous city and who lawfully occupies that critical office.  The dispute turns on important constitutional issues concerning the First Amendment limits on the Governor's authority to remove other Florida elected officials, and whether the Governor may use that authority as a tool to silence viewpoints and ideas that he opposes.  Until this case is resolved, the degree of protection to be afforded core political speech by the State's elected representatives remains in doubt.

Expedited treatment is warranted.

# BACKGROUND

### I.    Mr. Warren Was Twice Elected State Attorney as a Reform Advocate

Appellant Andrew Warren is an experienced law enforcement official who has dedicated most of his professional life to public service.  After a decorated career as a federal prosecutor, Mr. Warren ran for, and was elected twice by the people of Hillsborough County to serve as, the State Attorney for the 13th Judicial Circuit in 2016 and 2020.  *See* ECF No. 1 at ¶ ¶ 22-23; ECF No. 138 at 53:17-54:7; ECF No. 150 at 8-9.

During his campaign and in office, Mr. Warren spoke out publicly in favor of criminal justice reform and about the role of prosecutors in the wise, just, and efficient administration of law enforcement resources.  *See* ECF No. 138 at 77:7-20; 94:8-96:13; 171:23-172:9.  As part of that advocacy, Mr. Warren attached his signature to advocacy letters written and published by an organization called Fair and Just Prosecution ("FJP").  Among other statements about matters of public controversy, including the death penalty and election security, Mr. Warren joined over 70 other prosecutors around the country in signing a June 2021 FJP letter expressing concern over an increase in legislation across the country inhibiting the rights of transgender people and their access to gender affirming care (the "Transgender Statement").  ECF No. 1-1 at 13-20.  Mr. Warren also joined 90

other prosecutors from across the country on a letter issued by FJP in June 2022 following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (the "Abortion Statement"). ECF No. 1-1 at 22-30. Both letters consisted of core political speech expressing opinions about controversial issues. *Id.* at 13-20; *id.* at 22-30*; see* ECF No. 150 at 40. Neither referred to any Florida laws or announced policies of the State Attorney's Office for the 13th Judicial Circuit ("SAO 13"). ECF No. 150 at 39-40.

## II.    Governor DeSantis Illegally Suspended Mr. Warren in Retaliation for His Protected Speech

In December 2021, amid a fierce national debate about the wisdom of criminal justice reform viewpoints, Governor DeSantis asked his senior executive team to look into whether there were any prosecutors in Florida that advocated such an approach. *Id.* at 15-16. Larry Keefe, the Governor's "Public Safety Czar," obliged. *Id.* at 16. But Mr. Keefe did not conduct an investigation. *See, e.g.*, ECF No. 138 at 202:11-12 ("I didn't consider it to be an investigation[.]"); *id.* at 203:15 ("Once again, I did not conduct an investigation."); *id.* at 210:4 ("I was not conducting an investigation."). Instead, he telephoned his like-minded contacts in law enforcement who were opposed to progressive prosecution ideas to discuss Florida prosecutors with a "mindset" or "approach" that would, by his standards, cause "chaos" and should not be allowed to "proliferate throughout the state of

Florida." *See id.* at 203:17-20, 217:3-25; ECF No. 150 at 16-17. Those contacts told Mr. Keefe that Mr. Warren had a "reputation" for such views and had "taken up the mantle" of reform prosecution. ECF No. 138 at 207:3-208:17. Mr. Keefe did not ask about any specific policies or cases; he "paid no attention to the details" of Mr. Warren's actual policies or enforcement activity and "took not a single note." ECF No. 150 at 17; *see also* ECF No. 138 at 215:8-19.

In the course of his work, Mr. Keefe found several letters written and published by FJP that Mr. Warren had joined to express his views on policy subjects such as the death penalty, gender affirming care, and abortion rights. ECF No. 150 at 17-18. Mr. Keefe brought those statements to Governor DeSantis' General Counsel's office, insisting that Mr. Warren be removed from Office on the basis of his views about those topics. *See id.* at 20, 22.

Without carrying out any additional diligence, the Governor's office began the process of drafting the Executive Order to suspend Mr. Warren. *Id.* No one from the Governor's office contacted Mr. Warren or any of the prosecutors in his office to inquire about Mr. Warren's policies or enforcement activity. ECF No. 138 at 247:3-8. As the District Court found, the Governor's office "made no effort to determine" Mr. Warren's actual performance as a prosecutor because they "did not wish to know." ECF No. 150 at 55.

On August 4, 2022, Governor DeSantis issued Executive Order 22-176 suspending Mr. Warren pursuant to Art. IV, § 7(a), Fla. Const. for "incompetence" and "neglect of duty." ECF No. 1 at ¶ ¶ 17-18; ECF No. 1-1 at 2-11. In the Executive Order, Governor DeSantis cited the Gender and Abortion Statements as grounds for suspension, purportedly on the ground that those letters demonstrated "incompetence" and "neglect of duty". ECF No. 1-1 at 2-11. The same day, Governor DeSantis appointed Susan Lopez to act as the interim State Attorney for the 13th Judicial Circuit. ECF No. 1 at ¶ 70. Ms. Lopez, a staunch supporter of the Governor, immediately began rescinding Mr. Warren's policies and repudiating his viewpoints. *Id.* at ¶ ¶ 72, 75; ECF No. 3-1 at 8.

### III. The District Court Ordered Expedited Proceedings and Ruled the Suspension Unlawful

On August 17, 2022, Mr. Warren brought suit in the Northern District of Florida alleging, *inter alia*, that his suspension violated the First Amendment of the U.S. Constitution and seeking relief pursuant to 42 U.S.C § 1983. Mr. Warren simultaneously filed a motion for preliminary injunction requesting that the court order Governor DeSantis to rescind the Executive Order and reinstate Mr. Warren to his constitutional office.

Following an expedited hearing, the District Court on September 19, 2022 denied the Governor's motion to dismiss Mr. Warren's federal claims. While the

District Court also denied the preliminary injunction, it ordered expedited discovery and trial proceedings because the public interest "call[ed] for proceeding to trial as soon as possible." ECF No. 68 at 28.

In an extraordinarily compressed timetable consistent with the urgency the District Court had identified, the parties conducted 15 depositions over less than two months. *See* ECF No. 150 at 5.

The case proceeded to a three-day trial ending on December 1, 2022. At the conclusion of the proceedings, the District Court noted that "this is a case of some urgency" and indicated that the parties "need my opinion as quickly as I can get it." ECF No. 146 at 774:18-19.

On January 20, 2023 the District Court issued its opinion, concluding that Governor DeSantis violated both the Florida and Federal Constitutions by suspending Mr. Warren. *See* ECF No. 150 at 1-2. The Court rejected DeSantis' assertion that Mr. Warren was "incompetent" or displayed "neglect of duty," deeming that question "not close." *See id.* at 15. To the contrary, the Court explained, Mr. Warren was "diligently and competently performing the job he was elected to perform"—a fact that the Governor could have easily confirmed this with a "minimally competent inquiry." *Id.*

The Court concluded that the suspension violated the First Amendment because the Governor was motivated in substantial part by retaliation for Mr. Warren's protected speech. *See id.* at 1-2 ("The order concludes the suspension violated the Florida Constitution and was based in part on a violation of the First Amendment to the United States Constitution."). The District Court declined, however, to reinstate Mr. Warren based on several erroneous conclusions, including a perceived Eleventh Amendment bar on federal injunctive relief based on violations of both federal and state law. *Id.* at 59.

### IV.    Governor DeSantis Has Refused to Follow the Law

The District Court noted that the constitutional violations were so blatant that Governor DeSantis should act immediately to remedy them. "If the facts matter," the Court explained, "the Governor can simply rescind the suspension. If he does not do so, it will be doubly clear that" his purported reasons for the suspension were pretextual. *Id.* at 53.

Based on that direction, Mr. Warren wrote the Governor on January 25, 2023, calling on the Governor to honor his oath of office to ensure the faithful execution of the laws by reinstating Mr. Warren to the role of State Attorney. *See* Declaration of David O'Neil ("O'Neil Decl.") Exhibit 1, Letter from Andrew H. Warren to Ron DeSantis on Executive Order #22-176 at 1. The Governor did not

respond except in a press release that refused the reinstatement request and defiantly insisted that the Governor ordered the suspension because "Mr. Warren signed a statement" authored by FJP. *See* O'Neil Decl. Exhibit 2*, DeSantis Says He Won't Reinstate Suspended Hillsborough Prosecutor Andrew Warren*, WUSF PUBLIC MEDIA (Jan. 26, 2023, 6:55 AM), https://wusfnews.wusf.usf.edu/politics-issues/2023-01-26/desantis-says-he-wont-reinstate-suspended-hillsborough-prosecutor-andrew-warren.

Mr. Warren therefore remains unlawfully suspended. Because Mr. Warren is still the State Attorney of the 13th Judicial Circuit, he may be constitutionally prohibited from the private practice of law. Fla. Const. Art. V, § 17 (providing that State Attorneys must "devote full time to the duties of the office" and are prohibited from "engag[ing] in the private practice of law"). For the past 194 days, Mr. Warren therefore has been unable to earn income to support his family of four.

## ARGUMENT

Good cause exists to expedite this appeal. *See* 11th Cir. R. 27-1, IOP 3. The case implicates interests of profound importance to the public because it will determine who lawfully occupies the office of the chief state prosecutor in one of Florida's most populous areas and whether the results of two elections for that office will stand. The appeal also primarily presents issues of constitutional law

that are particularly suited for expedited treatment and that will determine the free speech rights of elected officials throughout the State.

## I.    The Significant Public Interests at Stake Require Expeditious Resolution

The District Court's decision has created an untenable situation. The Governor's suspension had the immediate effect of overturning two elections and invalidating the votes of nearly half a million Floridians for the chief state prosecutor in Hillsborough County, Florida. ECF No. 1 at ¶¶ 22-23. Under the law as announced by the District Court, that suspension was illegal. ECF No. 150 at 59. But because the District Court did not reinstate Mr. Warren, the lawful occupant of the State Attorney's Office is not serving in that role. Instead, a person for whom no Floridian ever voted—and whose appointment was illegal by implication of the decision below—is wielding the powers of the office and prosecuting individuals under the auspices of the State of Florida. Meanwhile, Mr. Warren may not occupy the office he holds and may be prohibited from earning income from the private practice of law elsewhere. *See* Fla. Const. Art. V, § 17. Particularly in light of the Governor's avowed refusal to honor the decision and the law it announced, the *status quo* is intolerable.

This Court has expedited appeals where, as here, the outcome implicates the integrity of elections and the results of the democratic process. *See, e.g., Jones v.*

10

*DeSantis,* No. 19-14551-GG (11th Cir. Dec. 5, 2019), Dkt. 44, 51 (granting expedited appeal where the state legislature overturned the will of the voters by imposing conditions on restoring felons' right to vote subsequent to the passing of a ballot referendum restoring the right); *see also, Hand v. Scott*, 888 F.3d 1206, 1215 (11th Cir. 2018) (ordering accelerated briefing schedule and oral argument so that the matter of convicted felons' voting rights could be "resolved quickly" by the Court); *Brown v. Sec'y of State*, 668 F.3d 1271, 1274 (11th Cir. 2012) (expediting oral argument and review of a challenge to a ballot initiative proposing standards to be used in the congressional redistricting process); *Duke v. Cleland*, 954 F.2d 1526, 1528 (11th Cir. 1992) (expediting appeal where appellant alleged a First Amendment violation when his name was excluded from the Georgia republican presidential primary ballot).  The same treatment is warranted here. The Executive Order suspending Mr. Warren substituted the Governor's will for that of the people of Hillsborough County as expressed at the ballot box.  Any unnecessary delay in resolving this case prolongs the uncertainty concerning, as well as the public's confidence in, the legal force accorded to the outcome of those elections.

This appeal also poses profound implications for free and public debate in Florida among the State's elected officials.  Courts routinely expedite appeals in

cases like this one that implicate First Amendment rights vital to public debate. *See Duke*, 954 F.2d at 1528 (expediting appeal where appellant alleged a First Amendment violation when his name was excluded from the Georgia republican presidential primary ballot); *see also In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (granting expedited review of the district court's *sua sponte* gag order "to address the serious First Amendment concerns raised by petitioner in a timely manner"); *TGP Commc'ns., LLC v. Sellers*, 2022 U.S. App. LEXIS 33641 (9th Cir. Nov. 30, 2022) (granting expedited review where appellants alleged County violated the First Amendment by engaging in viewpoint based discrimination in deciding which journalists should receive press passes).

As Mr. Warren will demonstrate in merits briefing, Governor DeSantis' decision to suspend Mr. Warren reflected quintessential viewpoint discrimination of the kind that this Court has strongly suggested is "unconstitutional *per se*." *Otto v. City of Boca Raton*, 981 F.3d 854, 864 (11th Cir. 2020). The constitutional infirmity here is particularly egregious because speech by elected officials on matters of public importance powers our democracy and occupies the core of the First Amendment. "The manifest function of the First Amendment in a representative government requires that [elected officials] be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116,

135–36 (1966); *Republican Party of Minn. v. White*, 536 U.S. 765, 781–82 (2002) (quoting *Wood v. Georgia,* 370 U.S. 375, 395 (1962)) ("The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance.").

Prolonged uncertainty about the legality of the suspension will have a chilling effect on speech by elected officials on issues of public concern. Unless and until this Court invalidates the suspension, elected officials who hold views unpopular with the Governor will inevitably refrain from, or at least pause before, speaking their minds.[2] Indeed, based on the trial testimony, the suspension and its aftermath have created an atmosphere of fear and self-censorship on the part of

---

[2] *See* O'Neil Decl. Exhibit 3, Steve Newborn, *Stetson Professor Calls Andrew Warren's Suspension a 'Rule of Politics' Instead of a Rule of Law*, WUSF PUBLIC MEDIA, (Aug. 15, 2022) ("Louis Virelli says the suspension by Gov. Ron DeSantis was premature and created to send a chilling effect to other elected officials."), *available at* https://wusfnews.wusf.usf.edu/politics-issues/2022-08-15/stetson-professor-andrew-warren-suspension-rule-of-politics-instead-rule-of-law; *see also* O'Neil Decl. Exhibit 4, FOX 13 News Staff, *Warren vs. DeSantis: Ousted Florida State Attorney Cannot Legally be Reinstated by U.S. Court, Judge Rules*, FOX 13 TAMPA BAY (Jan. 20, 2023) ("What's troubling to me is what might happen down the road," Brunvand offered. "Is this going to be a pattern where the governor disagrees with certain aspects of what a prosecutor does, where they come in and remove them? It's a troubling pattern. I think Andrew Warren was doing a great job. I think the current prosecutor is doing a great job. But the idea of the governor coming in and removing a prosecutor is frightening and could have a real chilling effect on having independent decisions."), *available at* https://www.fox13news.com/news/warren-vs-desantis-ousted-florida-stateattorney-cannot-legally-be-reinstated-by-u-s-court-judge-rules.amp.

public employees. *See*, *e.g.*, ECF No. 146 at 555:20-21 ("I think most days since the suspension I assumed I would be fired . . ."); *id.* at 583:18 ("I think I'm fearful, period, about my job. . .").

## II. The Issues Presented Are Appropriate for Expedited Resolution

Expedited adjudication is appropriate because this appeal principally presents purely legal issues. *Cf., e.g.*, *Trump v. U.S.*, No. 22-13005, 2022 WL 4366684 (11th Cir. 2022), Dkt 36, 38 (granting a motion for an expedited appeal where "the parties have already briefed these legal disputes thoroughly," and "expediting th[e] appeal [would] serve the interests of judicial economy"). Those issues concern the limits on the Governor's authority to use the speech of elected officials as a basis for suspension. They include, among other questions, whether a federal court may order relief when a state officer's conduct violates both the First Amendment and state law; whether a defendant in a First Amendment retaliation action may prove the same-decision affirmative defense under *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977), based on a motivation that the defendant did not proffer and indeed affirmatively disavowed; whether a defendant may prove that affirmative defense on the basis of an imputed motivation that is itself illegitimate and otherwise illegal; and whether an adverse

14

employment action motivated by political considerations implicates the First Amendment.

As Mr. Warren will demonstrate in his briefing on the merits, the District Court erred in fundamental respects on each of these legal issues, and reversal on any one of them would require overturning the decision below.[3]

Finally, the posture and history of this case justifies expedited resolution. At the direction of the District Court, which correctly recognized the urgency of the issues and the public interest in "proceeding to trial as soon as possible," ECF No. 68 at 28, the parties have litigated the case on a fast track—from complaint to discovery to trial in four months. The parties are therefore primed and ready to do the same on appeal. *See* Order Granting Expedited Appeal, *Trump v. United States*, No. 22-13005 (11th Cir., Oct. 5, 2022), Dkt. 38 (granting an expedited

---

[3]  That Mr. Warren also has state-law claims, which he will pursue through a separate *Quo Warranto* action, has no bearing on this motion. *See Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("[I]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."), *overruled on other grounds by, Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see also McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 671–72 (1963) (internal citations and quotations omitted) (holding that among the core purposes of Section 1983 was "to provide a remedy in the federal courts supplementary to any remedy any State might have").

appeal where the parties briefed the issue on appeal on compressed schedules before the lower court).

## CONCLUSION

For the foregoing reasons, good cause exists to expedite this appeal. Accordingly, Mr. Warren respectfully requests expedited treatment.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

16

## PROPOSED SCHEDULE

Based on the need for expedited treatment, Appellants respectfully propose the following schedule:

Opening deadline:     March 3, 2023

Opposition deadline:     March 24, 2023

Reply deadline:     April 5, 2023

Argument:   The week of April 17, 2023, pending the Court's availability.

Dated: February 14, 2023                Respectfully submitted,

**PERKINS COIE LLP**

Jean-Jacques Cabou
Alexis E. Danneman
2901 N. Central Avenue, Suite 2000 Phoenix, Arizona 85012
(602) 351-8000
JCabou@perkinscoie.com
ADanneman@perkinscoie.com

**OLDER, LUNDY, KOCH & MARTINO**

David B. Singer
Matthew T. Newton
1000 W. Cass St.
Tampa, FL 33606
(813) 254-8998
dsinger@olderlundylaw.com
mnewton@olderlundylaw.com

**DEBEVOISE & PLIMPTON LLP**

*/s/ David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant Andrew Warren*

17

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,527 words as counted by the word-processing system used to prepare it.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

DEBEVOISE & PLIMPTON LLP

/s/ *David A. O'Neil*
David A. O'Neil
801 Pennsylvania Ave. NW,
Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I served a true and correct copy of the foregoing document via electronic mail to Defendant-Appellee's counsel listed below:

Jeff Aaron
George T. Levesque
Gray Robinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32302
(850) 577-9090
George.levesque@gray-robinson.com
Jeff.Aaron@gray-robinson.com

Henry C. Whitaker
Jeffrey Paul DeSousa
David Costello
James Percival
Natalie Christmas
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
Henry.Whitaker@myfloridalegal.com
Jeffrey.DeSousa@myfloridalegal.com
David.Costello@myfloridalegal.com
James.Percival@myfloridalegal.com
Natalie.Christmas@myfloridalegal.com

**DEBEVOISE & PLIMPTON LLP**
By: /s/ David A. O'Neil
David A. O'Neil
801 Pennsylvania Ave NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com