No. 23-10459

# In the United States Court of Appeals for the Eleventh Circuit

---

ANDREW WARREN,
*Plaintiff-Appellant,*

v.

RON DESANTIS,
*Defendant-Appellee.*

---

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
No. 4:22-cv-00302-RH-MAF

---

## RESPONSE IN OPPOSITION TO APPELLANT'S MOTION TO EXPEDITE

---

|  |  |
|---|---|
| | ASHLEY MOODY |
| | *Attorney General of Florida* |
| PL-01, The Capitol | HENRY C. WHITAKER |
| Tallahassee, FL 32399-1050 | *Solicitor General* |
| (850) 414-3300 | DANIEL W. BELL |
| *henry.whitaker@myfloridalegal.com* | JEFFREY PAUL DESOUSA |
| | *Chief Deputy Solicitors General* |
| *Counsel for Defendant-Appellee* | DAVID M. COSTELLO |
| | *Deputy Solicitor General* |
| *(Additional counsel on next page.)* | ROBERT S. SCHENCK |
| | ZACHARY GROUEV |
| | *Solicitor General Fellows* |

GEORGE T. LEVESQUE
JEFF AARON

GrayRobinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32302
(850) 577-9090
*george.levesque@gray-robinson.com*

*Counsel for Defendant-Appellee*

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee certifies that, to the best of his knowledge, the following is a complete list of interested persons:

1.  Aaron, Jeffrey M.,

2.  Abel, Richard,

3.  Albinson, Jeff,

4.  Alfieri, Anthony,

5.  Anstead, Harry Lee,

6.  Arenella, Peter,

7.  Austin, Jr., Roy L.,

8.  Bakkedahl, Tom,

9.  Ball, David,

10. Ballard, Matthew J.,

11. Bandes, Susan,

12. Barakat, Charbel,

13. Barnett, Martha,

14. Bartlett, Bruce L.,

15. Basford, Larry,

16. Beltran, Michael P.,

17. Bennett, Paul,

18.    Bentley III, A. Lee,

19.    Benza, Michael,

20.    Berkowitz, Herbert M.,

21.    Bernabe, Alberto,

22.    Bernstein, Anita,

23.    Bernstein, Lauren Jacobson,

24.    Bhabha, Ishan K.,

25.    Bilchik, Shay,

26.    Bondi, Pamela,

27.    Boone, Larry,

28.    Bowling, Bret,

29.    Boyd, Bobbi Jo,

30.    Boyer, Bruce,

31.    Brackney, Ph.D., RaShall,

32.    Brady, Scott,

33.    Brann, Joseph,

34.    Brewer, Jr., Robert,

35.    Bridge, Bobbe J.,

36.    Broderick, Katherine,

37.    Brodsky, Ed,

38.     Broussard, Robert L.,

39.     Buckler, Carol,

40.     Bueermann, Jim,

41.     Buhai, Sande,

42.     Bulman-Pozen, Jessica,

43.     Burbank, Chris,

44.     Burkoff, John,

45.     Burnele, Powell,

46.     Butterworth, Jr., Robert A.,

47.     Cabou, Jean-Jacques,

48.     Cabral, Andrea J.,

49.     Carlisle, Jay,

50.     Casselman, Margo R.,

51.     Cassidy, Michael,

52.     Cerniglia, Christine,

53.     Chemerinsky, Erwin,

54.     Chin, Doug,

55.     Chin, Gabriel,

56.     Christine, Bobby,

57.     Christmas, Natalie,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

58. Clayton, Jerry,

59. Cochran, Donald,

60. Coker, Donna Kay,

61. Colbert, Doug,

62. Cole, Liz Ryan,

63. Coleman, Russell,

64. Colton, Bruce,

65. Cooper, Benjamin,

66. Corcoran, Anne,

67. Costello, David M.,

68. Cox, Brendan,

69. Cummings, Scott,

70. Danneman, Alexis E.,

71. Davis, Angela,

72. Deitch, Brittany,

73. DeSantis, Ron,

74. DeSousa, Jeffrey P.,

75. Devereaux, Damon,

76. Dillof, Anthony,

77. Dressler, Joshua,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

78.    Dunavant, Michael,

79.    Eaton, Jr., O.H.,

80.    Elliot, Chris,

81.    Emerson, Robert,

82.    Epstein, Jules,

83.    Evans, Robert Wayne,

84.    Ewing, Charles,

85.    Fagan, Jeffrey,

86.    Feldman, Heidi Li,

87.    Fields, Lazaro,

88.    Fields, Shawn,

89.    Fitzpatrick, Hon. Martin A.,

90.    Florida Sheriffs Association,

91.    Flowers, Roberta,

92.    Fox, Amira D.,

93.    Franklin, Neil,

94.    Freed, David,

95.    Freidin, Ellen,

96.    Furgeson, Jr., William Royal

97.    Galoob, Stephen,

98.   Gamaldi, Joe,

99.   Garcetti, Gil,

100.  Garnett, Stan,

101.  Gentithes, Michael,

102.  Gertner, Nancy,

103.  Gladson, William,

104.  Godsoe, Cynthia,

105.  Goldstock, Ronald,

106.  Gossett, Christian,

107.  Graziano, Kristin,

108.  Green, Bruce A.,

109.  Greenbaum, Arthur,

110.  Griffin, Lissa,

111.  Grodin, Joseph R.,

112.  Grosso, Catherine,

113.  Grouev, Zachary P.,

114.  Gundlach, Jennifer,

115.  Haas, Brian,

116.  Halle, Kris Anne,

117.  Harris, David,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

118.    Harshbarger, Scott,

119.    Hawkes, Paul,

120.    Hellman, Lawrence,

121.    Herdman, Justin,

122.    Hessick, Carissa Byrne,

123.    Hicks, Jason,

124.    Hill, Jerry,

125.    Hinkle, Hon. Robert L.,

126.    Hoag-Fordjour, Alexis,

127.    Holder, Gregory Paul,

128.    Howell, Babe,

129.    Hull, Bryan David,

130.    Hutchinson, Ed,

131.    Hyde, Thomas,

132.    Jaroslaw, Ilene,

133.    Joyal, Moe,

134.    Joyal, Ursula,

135.    Kelly, Charles B.,

136.    King, Adam,

137.    King, Brad,

138.  Kobil, Daniel,

139.  Koerner, Matthew R.,

140.  Kollar, Justin F.,

141.  Kramer, Brian,

142.  Kronick, Katie,

143.  Kruse, Katherine R.,

144.  Larizza, R.J.,

145.  Lassar, Scott,

146.  Laurin, Jennifer,

147.  Lawson, Sara Alpert,

148.  Levens, William P.,

149.  Levenson, Laurie,

150.  Levesque, George T.,

151.  Levine, Kay,

152.  Lewis, Timothy K.,

153.  Listenbee, Robert L.,

154.  Little, Rory,

155.  Lopez, Maria Chapa,

156.  Lubet, Steven,

157.  Madden, Ginger Bowden,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

158.  Madrid, Patricia A.,

159.  Margulies, Peter,

160.  Markovic, Milan,

161.  Marshall, Steve,

162.  Mather, Lynn,

163.  Matsuoka, Tania C.,

164.  McCollum, Bill,

165.  McFadden, Garry, L.

166.  McMunigal, Kevin,

167.  Medwed, Daniel,

168.  Meggs, William N.,

169.  Melton III, Howell Webster,

170.  Menendez, Jr., Manuel,

171.  Menkel-Meadow, Carrie,

172.  Metzger, Pamela,

173.  Millemann, Michael,

174.  Miller, Eric,

175.  Minkoff, Ronald,

176.  Moore, Richard,

177.  Morris, Chris,

178.   Morrison, Caren Myers,

179.   Needham, Carol,

180.   Newborn, Steven A.,

181.   Newton, Matthew T.,

182.   Norton, Jerry,

183.   Nunn, Kenneth,

184.   O'Connor, Michol,

185.   O'Neil, David A.,

186.   O'Neill, Jerome,

187.   O'Neill, Timothy,

188.   Orenstein, Aviva Anne,

189.   Ortiz, Carmen M.,

190.   Ouziel, Lauren,

191.   Pariente, Barbara,

192.   Parsons, Ron,

193.   Pearce, Russell,

194.   Pearson, Melba,

195.   Percival, III, James H.,

196.   Perlin, Michael,

197.   Phillips, Channing,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

198. Podgor, Ellen S.,

199. Powell, Burnele

200. Pridgen, Abdul D.,

201. Quick, Albert T.,

202. Quick, Brenda,

203. Quince, Peggy,

204. Rapoport, Nancy,

205. Regalado, Vic,

206. Reid, Teresa Jean,

207. Reiner, Ira,

208. Ricardo, Kim D.,

209. Robbins, Ira,

210. Roberts, Jenny,

211. Robertson, Andra,

212. Robson, Ruthann,

213. Rosen, Robert,

214. Rosenthal, Stephen,

215. Ross, Josephine,

216. Rossman, David,

217. Rozelle, Susan,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

218.  Rudovsky, David,

219.  Safavi, Sherry,

220.  Saito, Natsu,

221.  Salcines, E.J.,

222.  Saltzburg, Stephen A.,

223.  Sammons, Jack,

224.  Schaefer, Paula,

225.  Scheindlin, Shira A.,

226.  Schenck, Robert S.

227.  Schnorrenberg, Sarah B,

228.  Scott, McGregor,

229.  Shores, R. Trent,

230.  Shorstein, Harry L.,

231.  Siegel, David,

232.  Singer, David B.,

233.  Singh, Samantha B.,

234.  Singleton, David A.,

235.  Sloan, Cliff,

236.  Smith, Abbe,

237.  Sonnett, Neal R.,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

238.  Southerland, Vincent,

239.  Spagnoletti, Robert J.,

240.  Spitzer, Hugh D.,

241.  Stamper, Norm,

242.  Stempel, Jeff,

243.  Stephens, Darrel,

244.  Strait, John,

245.  Strang, Dean,

246.  Sullivan, Ron,

247.  Suvall, Cara,

248.  Swain, Alexandra P.,

249.  Swan, Sarah L.,

250.  Synan, Tom,

251.  Tanaka, Elizabeth,

252.  Tarr, G. Alan,

253.  Tibbles, Lance,

254.  Tierney, James,

255.  Town, Jay,

256.  Tremblay, Paul,

257.  Tribe, Laurence H.,

*Warren v. DeSantis*
*Eleventh Circuit Case No. 23-10459*

258. Troy, Anthony F.,

259. Turner, Kevin,

260. Turner, Tim,

261. Unikowsky, Adam G.,

262. Unikowsky, Lauren Jacobson,

263. Uphoff, Rodney,

264. Vance, Cyrus R.,

265. Varadi, Benjamin,

266. Walsh, John,

267. Ward, Dennis W.,

268. Warren, Andrew H.,

269. Warren, Jeffrey Wayne,

270. Waurishuk, Jim,

271. Waxman, Seth,

272. Webb, Jeanne,

273. Weich, Ronald,

274. Weinberg, Jr., Morris,

275. Weiss, Jonathan A.,

276. West, Chris,

277. Whitaker, Henry C.,

278.    Wilson, Jodi,

279.    Woods, Jordan Blair,

280.    Wright, Ron,

281.    Wynbrandt, Kathryn L.,

282.    Yaroshefsky, Ellen,

283.    Zitrin, Richard

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ ii

Introduction ....................................................................................................... 1

    A.    Florida's State Attorneys ...................................................... 2

    B.    Mr. Warren's refusals to enforce state law ........................ 4

    C.    The suspension ....................................................................... 6

    D.    This lawsuit ............................................................................ 8

Argument ........................................................................................................... 10

    I.    Mr. Warren has not established good cause to expedite review. .................... 10

    II.    If this Court expedites review, it should adopt the Governor's alternative schedule. ................................................................................ 16

Conclusion .......................................................................................................... 16

Certificate of Compliance ................................................................................. 18

Certificate of Service ......................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Austin v. State* ex rel. *Christian*,
   310 So. 2d 289 (Fla. 1975) ........................................................................ 3

*Ayala v. Scott*,
   224 So. 3d 755 (Fla. 2017) ........................................................................ 3

*Brown v. Sec'y of State*,
   668 F.3d 1271 (11th Cir. 2012) ............................................................... 15

*Carver v. Liberty Mut. Ins. Co.*,
   277 F.2d 105 (5th Cir. 1960) ................................................................... 10

*DeMartini v. Town of Gulf Stream*,
   942 F.3d 1277 (11th Cir. 2019) ............................................................... 14

*Duke v. Cleland*,
   954 F.2d 1526 (11th Cir. 1992) ............................................................... 15

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................ 13

*Flack v. Graham*,
   453 So. 2d 819 (Fla. 1984) ................................................................. 12, 13

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ............................................................................. 9, 13

*Gundy v. City of Jacksonville*,
   50 F.4th 60 (11th Cir. 2022) ................................................................... 13

*Hand v. Scott*,
   888 F.3d 1206 (11th Cir. 2018) ............................................................... 15

*In re Murphy-Brown, LLC*,
   907 F.3d 788 (4th Cir. 2018) ................................................................... 15

*Israel v. DeSantis*,
   269 So. 3d 491 (Fla. 2019) ....................................................................... 4

*Jones v. DeSantis*,
   950 F.3d 795 (11th Cir. 2019) ................................................................. 15

*Medeva Pharma Suisse A.G. v. Par Pharm., Inc.*,
   430 F. App'x 878 (Fed. Cir. 2011) ........................................................... 11

*Morland v. Sprecher*,
   443 U.S. 709 (1979) ........................................................................... 10, 11

*Moss v. City of Pembroke Pines*,
   782 F.3d 613 (11th Cir. 2015) ................................................................... 5

*Nieves v. Bartlett*,
   139 S. Ct. 1715 (2019) ....................................................................... 13, 14

*Pennhurst State School & Hospital v. Halderman,*
  465 U.S. 89 (1984) .................................................................... 9
*Pickering v. Bd. of Educ.,*
  391 U.S. 563 (1968) .................................................................... 9
*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
  547 U.S. 47 (2006) ...................................................................... 9
*Shaffer v. Def. Intel. Agency,*
  2011 WL 13243826 (D.D.C. Feb. 17, 2011) ............................. 11
*TGP Commc'ns, LLC v. Sellers,*
  2022 WL 17484331 (9th Cir. Dec. 5, 2022) ............................. 15
*United States v. Campbell,*
  26 F.4th 860 (11th Cir. 2022) ................................................... 14

## Statutes

28 U.S.C. § 1292 ........................................................................ 10
Fla. Const. art. IV, § 1 ................................................................. 3
Fla. Const. art. IV, § 4 ............................................................... 12
Fla. Const. art. IV, § 7 ....................................................... 3, 12, 15
Fla. Const. art. V, § 17 .................................................. 2, 11, 12, 15
Fla. Stat. § 27.015 ..................................................................... 12
Fla. Stat. § 27.02 ......................................................................... 2
Fla. Stat. § 27.14 ......................................................................... 3
Fla. Stat. § 111.05 ..................................................................... 13

## Rules

11th Cir. R. 27, IOP 3 ................................................................ 10
11th Cir. R. 31-1(a) ................................................................... 11

# INTRODUCTION

This case arises from pledges plaintiff Andrew Warren made as State Attorney for the Thirteenth Judicial Circuit to not enforce certain categories of laws enacted by the Florida Legislature. Because Mr. Warren supports abortion rights, he announced that he would not prosecute abortion crimes. Because Mr. Warren disagrees with criminalizing transgender-related medical procedures, he proclaimed that he would not enforce any such laws. And because Mr. Warren believes that he—not the Legislature—decides whether conduct should be criminal, he instructed his office not to prosecute many lower-level offenses and offenses stemming from bicycle stops unless they satisfied an extraneous element of his choosing—the presence of a public-safety threat.

Believing those pronouncements to invite lawlessness and reflect Mr. Warren's fundamental misunderstanding of his role as a Florida prosecutor, twice-elected Governor Ron DeSantis exercised his authority under the Florida Constitution to suspend Mr. Warren for neglect of duty and incompetence. Rather than defend against those charges in the Florida Senate (as he was—and remains—entitled to do under state law), Mr. Warren rushed to federal court and sued the Governor for First Amendment retaliation. Twice-elected Florida Attorney General Ashley Moody represented the Governor in district court, and continues to represent him on appeal. There the district court ruled for the Governor, finding that he would have suspended Mr. Warren solely for reasons unprotected by the First Amendment.

1

Despite claiming in district court that time was of the essence, Mr. Warren did not immediately appeal. Instead, he waited nearly a month to do so and contemporaneously filed a state quo warranto petition in the Florida Supreme Court—five months after the district court dismissed an identical quo warranto claim. He now asks this Court to expedite briefing in this appeal and give the Governor half the time to respond to the opening brief as Mr. Warren would have to draft it.

That will not do. Mr. Warren's failed challenge to his suspension does not warrant special expedited treatment on appeal any more than any ordinary employment dispute would. Contrary to his insinuation, the suspension does not prevent Mr. Warren from securing other employment and has not prevented him from securing representation by a platoon of attorneys from three different private law firms. At the least, the Court should adopt the Governor's proposed briefing schedule and reject Mr. Warren's attempt to foist the brunt of his delay on the Governor.

## BACKGROUND

### A.     Florida's State Attorneys

The Florida Constitution vests the State's authority to prosecute criminal cases in 20 state attorneys. Fla. Const. art. V, § 17; Fla. Stat. § 27.02(1). With few exceptions, these state attorneys have power to prosecute crimes within their judicial districts. Fla. Stat. § 27.02(1); *see also id.* § 27.03 (granting state attorneys power to appear before and advise grand juries deliberating in their districts and to prepare bills of indictment). They are elected to four-year terms by constituents within their jurisdictions. *Id.* § 27.01. And

they are permitted a staff of assistant state attorneys and supporting professionals to help them discharge their duties. *Id.* § 27.181.

While state attorneys have general discretion about whether to bring prosecutions in their districts, that power is subject to an important check. As Florida's twice-elected chief executive officer, Governor DeSantis has broad authority to oversee the executive branch. *See* Fla. Const. art. IV, § 1 (vesting the "supreme executive power" in the Governor). He may "take care that the laws be faithfully executed," *id.* § 1(a), a power that the Florida Supreme Court has long understood to encompass supervising the work of state attorneys, *see Austin v. State* ex rel. *Christian*, 310 So. 2d 289, 292 (Fla. 1975). By statute, as well, the Governor may assign a state attorney to assist another with their duties, and reassign classes of cases to a different state attorney if "the ends of justice" require it. Fla. Stat. § 27.14(1); *see also Ayala v. Scott*, 224 So. 3d 755, 757–58 (Fla. 2017) (in which then-Governor Rick Scott reassigned death-eligible cases to a different state attorney after State Attorney Aramis Ayala publicly stated that she would never pursue the death penalty). And most relevant here, the Governor may "[b]y executive order stating the grounds . . . suspend from office any state officer not subject to impeachment" for certain enumerated reasons. Fla. Const. art. IV, § 7(a). The suspension is then presented to the Florida Senate, which "may, in proceedings prescribed by law, remove from office or reinstate the suspended official." *Id.* § 7(b).

Two enumerated grounds for suspension are implicated here: "neglect of duty" and "incompetence." *Id.* § 7(a); Doc. 112-3 at 1, 9. Neglect of duty is "the neglect or

failure" of "a public officer to do and perform some duty" required by "his office." *Israel v. DeSantis*, 269 So. 3d 491, 496 (Fla. 2019). Incompetence is "any physical, moral, or intellectual quality, the lack of which incapacitates one to perform [his] duties." *Id.* It "may arise from gross ignorance of official duties or gross carelessness in the[ir] discharge." *Id.*

### B.    Mr. Warren's refusals to enforce state law

Mr. Warren was formerly State Attorney for Florida's Thirteenth Judicial Circuit in Hillsborough County. Doc. 138 at 46. During his tenure, Mr. Warren refused to prosecute certain kinds of cases. For example, he instructed his office not to prosecute cases arising from "a non-criminal [bicycle or pedestrian] violation," Doc. 112-22 at 2 (the Bike Stop Policy), or various low-level offenses, including "[t]respass at a business location," "[d]isorderly conduct," "[d]isorderly intoxication," and "[p]rostitution," Doc. 112-23 at 1 (the Low-Level Offense Policy) (collectively, the Presumptive Non-Prosecution Policies). Those general instructions could be overcome only by establishing the presence of an additional criminal element imposed not by the Legislature, but by Mr. Warren himself—the existence of a "public safety" threat. Doc. 112-22 at 2; Doc. 112-23 at 1; *see also* Doc. 144-1 at 96 (Sheriff of Hillsborough County testifying that Mr. Warren's office would "not prosecute these types of crimes").

Mr. Warren also signed two public statements in which he pledged not to enforce laws restricting abortion and transgender-related procedures (the Abortion Statement and the Gender Statement, collectively the Joint Statements). In the Abortion

Statement, Mr. Warren wrote that "[c]riminalizing and prosecuting individuals who" provide "abortion care makes a mockery of justice," Doc. 112-5 at 3, and "runs counter to the obligations and interests [prosecutors] are sworn to uphold," *id.* at 1. To ensure that "members of [his] community [did not] live in fear of" such laws, Mr. Warren promised to "refrain" from prosecuting those who "provide[] or support abortions" and to "decline to use [his] office['s] resources to criminalize reproductive health decisions." *Id.* He similarly "pledge[d]" in the Gender Statement "not [to] promote the criminalization of gender-affirming healthcare," stating that those laws serve "no legitimate purpose" and "do not promote public safety." Doc. 112-4 at 1–3. Mr. Warren signed each: "State Attorney, 13th Judicial Circuit (Tampa), Florida." Doc. 112-4 at 8; Doc. 112-5 at 8. Dozens of prosecutors from across the country joined him, each brandishing their official titles. Doc. 112-4 at 3–8; Doc. 112-5 at 3–9.[1]

Given the Joint Statements' unequivocal language, many observers took them as reflecting Mr. Warren's prosecutorial intentions. Multiple news outlets, for instance, reported that Mr. Warren had "vowed not to prosecute abortion" cases, Doc. 112-35

---

[1] Despite having already dismissed Mr. Warren's state-law claim, the district court nevertheless concluded that the Joint Statements and the Presumptive Non-Prosecution Policies were not bases for suspending Mr. Warren under Florida law. Doc. 150 at 13–15, 43–44, 59. The district court did not explain how that gratuitous determination bore on Mr. Warren's First Amendment challenge, in which the question was not whether he was suspended in accordance with the Florida Constitution, but whether he was suspended based on protected activity and whether the Governor would have suspended Mr. Warren notwithstanding that protected activity. *See Moss v. City of Pembroke Pines*, 782 F.3d 613, 617–18 (11th Cir. 2015).

at 2; *see also* Doc. 127 at 40–41 n.4 (collecting examples), and to instead focus on "serious crimes," Doc. 112-5 at 2; *see also* Doc. 112-31. Fair and Just Prosecution (FJP)—the group that drafted the Joint Statements—solicited Mr. Warren's signature by asking him to "commit to not using [his] office['s] resources to prosecute" abortion crimes. Doc. 136-2 at 2. It also characterized the Abortion Statement as "[n]early 70 elected prosecutors" "*pledg[ing]* not to criminalize abortion." Doc. 127 at 41 (emphasis added). And it proposed draft social-media posts for signatories to reiterate their "*promise*" that "no one will be charged for" abortion crimes. Doc. 113-16 at 2 (emphasis added). Nor was this impression limited to outsiders—Mr. Warren's own chief of staff, Gary Weisman, construed the Abortion Statement to mean that Mr. Warren would refuse to prosecute abortion cases. Doc. 113-24 at 1; Doc. 146 at 535–37, 540–41.

## C.    The suspension

In December 2021, the Governor asked his Senior Advisor for Public Safety, Larry Keefe, whether any state attorneys in Florida were refusing to enforce Florida law. Doc. 138 at 201–02. Mr. Keefe said he would look into the matter. *Id.* at 201–03.

To start, Mr. Keefe reached out to his Florida law-enforcement contacts. *Id.* at 203–06. After many discussions, Doc. 141 at 297–304, "all roads" in this inquiry led to Mr. Warren, Doc. 138 at 206–07, 209. Mr. Keefe thus contacted Hillsborough County Sheriff Chad Chronister for more insight into Mr. Warren. Doc. 138 at 209, 218; Doc. 144-1 at 61–64. Sheriff Chronister informed Mr. Keefe of Mr. Warren's Presumptive Non-Prosecution Policies and forwarded those policies to Mr. Keefe along with a

packet of documents that outlined cases that Mr. Warren had refused to prosecute. Doc. 138 at 218; Doc. 136-10; Doc. 144-1 at 67–69, 76–79. Mr. Keefe then discovered the joint statements Mr. Warren had signed. Doc. 138 at 209, 229–31.

With this information in hand, Mr. Keefe approached Ryan Newman, the Governor's General Counsel, about suspending Mr. Warren. *Id.* at 209–10; Doc. 141 at 411, 413–14; Doc. 146 at 597–601. At first, Mr. Newman was reluctant to recommend suspension, mainly because HB 5—Florida's recently enacted 15-week abortion ban— was facing a pending legal challenge. Doc. 146 at 600–01. But after realizing that Mr. Warren's pledge covered *all* abortion restrictions—not just HB 5—and that the Abortion Statement was just the latest in a string of refusals to enforce Florida law, Mr. Newman decided to recommend suspension to the Governor. *Id.* at 600–11. Like Mr. Newman, the Governor too was initially "reluctan[t]" to suspend Mr. Warren, but he became convinced that he could not "stand by" while Mr. Warren made a public "commitment" to "not enforce" an "entire class of laws." *Id.* at 612–14. The Governor thus gave a "green light" to "move forward" with the suspension. *Id.* at 615.

Around this time, Mr. Keefe prepared an initial draft of the suspension order and presented it to Ray Treadwell, the Governor's Chief Deputy General Counsel. Doc. 112-12; Doc. 141 at 480–81. Mr. Treadwell and Mr. Newman edited the draft and refined the bases for suspension to the Joint Statements and the Presumptive Non-Prosecution Policies. Doc. 141 at 480–83; Doc. 146 at 655–56. Eventually, the draft

reached the Governor, who made comments and light edits. Doc. 141 at 489–90; Doc. 146 at 623–27.

On August 4, 2022, the Governor signed the final executive order suspending Mr. Warren. Doc. 112-3. Citing the Joint Statements and the Presumptive Non-Prosecution Policies, the order noted (among other things) that Mr. Warren's "avowed refusal to enforce certain criminal laws" constituted "neglect of [Mr. Warren's] duty" to exercise his discretion case-by-case, and that his "public proclamations of non-enforcement further demonstrate[d] his incompetence" "arising from his gross ignorance of his official duties." *Id.* at 7–8.

### D.    This lawsuit

Rather than try to refute the Governor's charges in the Florida Senate, Mr. Warren sued the Governor in the Northern District of Florida, seeking declaratory and injunctive relief. Doc. 112-1. In Count I, Mr. Warren alleged that the Governor retaliated against him in violation of the First Amendment based on alleged speech in the Joint Statements. *Id.* at 17–22. In Count II, Mr. Warren claimed that his suspension did not comply with the Florida Constitution. *Id.* at 22–26.

Mr. Warren moved for a preliminary injunction, Doc. 3, and the Governor moved to dismiss, contending that Mr. Warren's statements about his prosecutorial intentions were official actions not protected by the First Amendment, and therefore, Mr. Warren's claims failed as a matter of law, *see Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006); *Pickering v. Bd. of Educ.*,

8

391 U.S. 563 (1968). Doc. 30. The district court dismissed Count II under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984) (federal courts may not enjoin state officials to comply with state law). Doc. 68 at 6. But it declined to dismiss Count I, concluding that Mr. Warren's statements were protected speech and that the complaint otherwise stated a First Amendment retaliation claim. Doc. 68 at 10–20, 29. The district court also declined to issue a preliminary injunction. *Id.* at 28; *see also* Doc. 69. The Governor later moved to certify the district court's order for interlocutory appeal, Doc. 60, but Mr. Warren opposed, *id.* at 11, and the district court denied certification, Doc. 74.

After ordering expedited discovery and conducting a three-day bench trial, the district court ruled for the Governor. Doc. 150. Though it rejected many of the Governor's legal defenses and made several extraneous findings related to the already-dismissed state-law claim, *e.g.*, *supra* 5 n.1, the district court ultimately found that the Governor would have suspended Mr. Warren for reasons unprotected by the First Amendment. Doc. 150 at 53, 58–59. It denied a permanent injunction. *Id.* at 58–59.

Mr. Warren waited 25 days to appeal to this Court. *Compare* Doc. 150 (issued January 20, 2023), *with* Doc. 152 (filed February 14, 2023). A day later, he filed a state quo warranto petition challenging the validity of his suspension under state law in the Florida Supreme Court, *see Warren v. DeSantis*, SC23-247 (Fla. Sup. Ct.)—a proceeding he could have initiated five months ago when the district court dismissed his state-law claim. He now asks this Court to expedite briefing in this appeal.

# ARGUMENT

Mr. Warren must show good cause to justify expedition. 11th Cir. R. 27, IOP 3. He has failed to do so. And even if expedition were warranted, Mr. Warren's proposed schedule penalizes the Governor for Mr. Warren's own delay. So if the Court expedites review, it should adopt the Governor's proposed schedule instead.

## I.    Mr. Warren has not established good cause to expedite review.

Mr. Warren has not shown good cause. He delayed in seeking appellate relief and failed to mitigate his financial injury. And he has not established that this case is a suitable candidate for expedition or that expedition is in the public interest.

1. "[E]quity aids the vigilant," *Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960), yet Mr. Warren has been far from vigilant in pursuing appellate relief. At the outset, Mr. Warren could have appealed months ago when the district court denied his motion for a preliminary injunction. Doc. 68; 28 U.S.C. § 1292(a)(1). He also opposed the Governor's effort to take an interlocutory appeal on whether Mr. Warren's statements were unprotected government speech, Doc. 60 at 11—a key legal issue that the parties will devote substantial resources to briefing before this Court.

But even more, Mr. Warren forfeited any "right . . . to expedited consideration" by slow-walking his appeal. *See Morland v. Sprecher*, 443 U.S. 709, 710 (1979) (declining to order expedited review when movant waited three weeks before seeking an expedited schedule); *see also Shaffer v. Def. Intel. Agency*, No. 1:10-cv-2119, 2011 WL 13243826, at *2 (D.D.C. Feb. 17, 2011) ("A party's failure to act promptly in prosecuting his case

and requesting expedited proceedings may preclude the court from granting such a request." (citing *Morland*, 443 U.S. at 710)). He waited nearly a month to notice this appeal. *Compare* Doc. 151 (entering final judgment on January 20, 2023), *with* Doc. 152 (noticing this appeal on February 14, 2023). Even then, he did not seek an injunction pending appeal or file his opening brief expeditiously, which he could have done as early as last week. *See* 11th Cir. R. 31-1(a); *see Medeva Pharma Suisse A.G. v. Par Pharm., Inc.*, 430 F. App'x 878, 880 (Fed. Cir. 2011) (denying motion to expedite and noting that the movant could "significantly self-expedite the case by filing its briefs early"). Rather, he moved for expedition, and sought a schedule under which his opening brief would be due on March 3—a leisurely six weeks after final judgment—while proposing that the Governor's brief be due 21 days later on March 24. To top it off, within 24 hours of appealing, Mr. Warren filed a parallel state quo warranto petition in the Florida Supreme Court. His proposal would thus force the Governor to respond in short succession to multiple filings that Mr. Warren had many weeks to prepare. That gamesmanship is not good cause.

Mr. Warren also suggests (at 9) that he has "been unable to earn income to support his family of four" during his suspension because Article V, Section 17 of the Florida Constitution says that state attorneys are prohibited from "engag[ing] in the private practice of law." But as the Governor represented to the district court at the preliminary-injunction hearing in September 2022, *see* Doc. 59 at 51–52, Mr. Warren is *not* the State Attorney while he is "suspend[ed] from office," as the Governor has

exercised his power to "fill the office by appoint[ing]" an interim State Attorney—Susan Lopez—"for the period of the suspension." Fla. Const. art. IV, § 7(a); *see also* Fla. Stat. § 27.015 ("All state attorneys . . . shall be prohibited from the private practice of law *while holding said office*." (emphasis added)). The restrictions contained in Article V, Section 17 are thus inapplicable to Mr. Warren. *See* Doc. 59 at 51–52. The Governor reiterated that position to Mr. Warren just two weeks ago when Mr. Warren's counsel asked for the Governor's position on whether Mr. Warren can work privately during the suspension. And the Governor reaffirmed that position just yesterday while seeking Mr. Warren's consent to proceed with the Florida Senate trial.

To be clear: Neither the Governor nor the Attorney General—Florida's twice-elected chief legal officer, Fla. Const. art. IV, § 4(b), and the Governor's representative here—know of any prohibition on Mr. Warren's practicing law while suspended. To the contrary, the Florida Supreme Court has acknowledged that when a legal officer's entitlement to office is in dispute, the officer may receive salary for private work despite constitutional limitations on the official's ability to pursue private employment. *See Flack v. Graham*, 453 So. 2d 819, 822 (Fla. 1984).[2] And although Mr. Warren is not currently

---

[2] Instead of seeking other employment, Mr. Warren has used this litigation as a fundraising vehicle. *See Andrew Warren Legal Fund*, https://andrewwarrenfl.com (requesting donations to help Mr. Warren "fight back . . . against Ron DeSantis' abuse of power") (last visited Feb. 22, 2023); *Safer Stronger Florida PAC*, https://secure.anedot.com/saferstrongerflorida/main (requesting donations to "help stop Ron DeSantis from trampling over the Constitution") (last visited Feb. 22, 2023).

receiving his salary as State Attorney, if he wins this appeal, he will receive compensation under Florida law, Fla. Stat. § 111.05, even if he takes a private salary (or other in-kind compensation) in the interim, *see Flack*, 453 So. 2d at 822.

2. Mr. Warren has also failed to show that his appeal is a suitable candidate for expedition. He first claims that this appeal "primarily presents issues of constitutional law that are particularly suited for expedited treatment." Mot. 9–10. Hardly. The case comes to this Court after a three-day bench trial in which the district court heard from 9 witnesses, considered 232 exhibits, and observed 1,467 pages of transcript. Many of the issues on appeal are heavily fact dependent, like whether the Governor reasonably thought Mr. Warren had committed suspendable offenses, *see Nieves v. Bartlett*, 139 S. Ct. 1715 (2019); whether he reasonably thought Mr. Warren's statements were government speech, *see Garcetti*, 547 U.S. 410; *Gundy v. City of Jacksonville*, 50 F.4th 60 (11th Cir. 2022); or whether Mr. Warren's politics had anything to do with the suspension, *see Elrod v. Burns*, 427 U.S. 347 (1976). Most obvious, the district court's decision boiled down to a *factual* finding—that the Governor would have suspended Mr. Warren solely for reasons unprotected by the First Amendment. Doc. 150 at 2. Those record-intensive issues are ill-suited for expedited review.

Moreover, given the "extraordinarily compressed" trial schedule below, Mot. 7, many of the complex legal issues presented here have not yet received the measured, in-depth consideration that they deserve. Mr. Warren is thus quite wrong to claim that the parties are "primed and ready" to litigate these important issues "on a fast track."

Mot. 15. For issues as weighty and wide-ranging as these, it is better to measure twice and cut once, not cut corners.

Mr. Warren also claims that expedition is warranted because "reversal on any one of" the issues he plans to raise "would require overturning the decision below." Mot. 15. That is wrong. This Court may "affirm on any ground supported by the law and the record," including grounds that the district court rejected. *United States v. Campbell*, 26 F.4th 860, 879 (11th Cir. 2022) (en banc) (citation omitted). So even if Mr. Warren could show error in the district court's fact-bound finding that "the suspension would have occurred even had there been no First Amendment violation," Doc. 150 at 2, this Court could still affirm the district court's judgment on any of the other legal theories that the Governor raised below but that the district court rejected, including the government-speech doctrine, *Pickering* balancing, the conduct-incident-to-speech doctrine, the probable-cause requirement adopted in *Nieves* and *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019), *Younger* abstention, and lack of federal-court equitable authority to interfere in state removal proceedings.

Mr. Warren further contends that this case mirrors instances where this Court expedited cases "implicat[ing] the integrity of elections," "the results of the democratic process," and "First Amendment rights vital to public debate." Mot. 10–12 (collecting cases). But all but one of the cases he cites involved an imminently impending or ongoing election. *See Jones v. DeSantis*, 950 F.3d 795, 800, 828–29 (11th Cir. 2019); *Hand v. Scott*, 888 F.3d 1206, 1215 (11th Cir. 2018); *Brown v. Sec'y of State*, 668 F.3d 1271, 1274

14

(11th Cir. 2012); *Duke v. Cleland*, 954 F.2d 1526, 1528 (11th Cir. 1992); *TGP Comm'ns, LLC v. Sellers*, No. 22-16826, 2022 WL 17484331, at *1 (9th Cir. Dec. 5, 2022). Courts expedited in those cases because the ability to exercise First Amendment rights turned on a time-sensitive event with a discrete deadline. The sole outlier, itself not binding on this Court, involved a sweeping prior restraint on discussing pending lawsuits. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018). Nothing comparable exists here.

Mr. Warren only underscores his misunderstanding of Florida law in urging that expedition is warranted because his suspension "canceled the votes of hundreds of thousands of Floridians." Mot. 2, 11. Thousands of people did indeed elect him to enforce the State's criminal law in Hillsborough County. *See* Fla. Const. art. V, § 17. But the people of Hillsborough County elected Mr. Warren subject to the Governor's suspension authority and are entitled to be served by a state attorney who does not neglect his duty and evince incompetence by substituting his judgment for the Legislature's. And *millions* of people elected the Governor to ensure that Mr. Warren faithfully performed his duties. *See* Fla. Const. art. IV, § 7(a). Suspending Mr. Warren represents Florida's democracy functioning as intended. And tellingly, the Governor won Hillsborough County in the 2022 election by almost 10 percentage points just three months after the suspension.[3]

---

[3] *Florida Governor Election Results*, The New York Times (Nov. 21, 2022) https://www.nytimes.com/interactive/2022/11/08/us/elections/results-florida-governor.html.

## II.    If this Court expedites review, it should adopt the Governor's alternative schedule.

In all events, even if the Court expedites, it should not adopt Mr. Warren's schedule, because it penalizes the Governor for Mr. Warren's delay in seeking appellate review. His proposed schedule has his opening brief due March 3 and the Governor's answer brief due March 24. That means Mr. Warren will have had 42 days to prepare his opening brief, while the Governor will have just 21 days to prepare his response. In addition, counsel for the Governor are responsible for several other matters with due dates in late March.

The Court should instead set the following schedule:

- **Opening brief:** Due by March 27, 2023

- **Answer brief:** Due by April 26, 2023

- **Reply brief:** Due by May 8, 2023

- **Oral argument:** First available sitting

This schedule would allow sufficient time for the parties to brief these important issues for the Court and for the Governor to respond to Mr. Warren's contemporaneously filed state quo warranto petition, which is pending on a dual track in the Florida Supreme Court.

## CONCLUSION

For these reasons, the Court should deny expedition. If the Court does expedite, it should adopt the Governor's alternative schedule.

16

Dated: February 22, 2023

GEORGE T. LEVESQUE
JEFF AARON

GrayRobinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32302
(850) 577-9090
george.levesque@gray-robinson.com

*Counsel for Defendant-Appellee*

Respectfully submitted,

ASHLEY MOODY
  *Attorney General of Florida*

*/s/ Henry C. Whitaker*
HENRY C. WHITAKER
  *Solicitor General*
DANIEL W. BELL
JEFFREY PAUL DESOUSA
  *Chief Deputy Solicitors General*
DAVID M. COSTELLO
  *Deputy Solicitor General*
ROBERT SCOTT SCHENCK
ZACHARY GROUEV
  *Solicitor General Fellows*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
henry.whitaker@myfloridalegal.com

*Counsel for Defendant-Appellee*

17

## CERTIFICATE OF COMPLIANCE

1.    This document complies with Fed. R. App. P. 27(f)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,278 words.

2.    This document complies with the typeface and type-style requirements of Fed. R. App. P 27, Fed. R. App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Henry C. Whitaker*
Solicitor General

18

## CERTIFICATE OF SERVICE

I certify that on February 22, 2023, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Henry C. Whitaker*
Solicitor General