Case No. 23-10459
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ANDREW WARREN,

Plaintiff–Appellant,

v.

RON DESANTIS,

Defendant–Appellee.

APPELLANT'S REPLY IN SUPPORT OF MOTION TO EXPEDITE APPEAL

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
No. 4:22cv302-RH-MAF

| | | |
|---|---|---|
| David A. O'Neil | Jean-Jacques Cabou | David B. Singer |
| DEBEVOISE & PLIMPTON, LLP | Alexis E. Danneman | Matthew T. Newton |
| 801 Pennsylvania Ave. NW, Suite 500 | PERKINS COIE LLP | OLDER, LUNDY, KOCH & MARTINO |
| Washington, D.C. 20004 | 2901 N. Central Avenue, Suite 2000 | 1000 W. Cass St. |
| (202) 383-8000 | Phoenix, Arizona 85012 | Tampa, FL 33606 |
| daoneil@debevoise.com | (602) 351-8000 | (813) 254-8998 |
| Alexandra P. Swain | JCabou@perkinscoie.com | Dsinger@olderlundylaw.com |
| 650 California St. | ADanneman@perkinscoie.com | mnewton@olderlundylaw.com |
| San Francisco, CA 94108 | | |
| (415) 738-5700 | | |
| apswain@debevoise.com | | |
| Samantha B. Singh | | |
| 66 Hudson Boulevard | | |
| NY, NY 10001 | | |
| (212) 909-6000 | | |
| sbsingh@debevoise.com | | |

*Counsel for Plaintiff-Appellant Andrew Warren*

CERTIFICATE OF INTERESTED PERSONS

Plaintiff-Appellant certifies that the following, as listed in Plaintiff-Appellant's Motion to Expedite Appeal, is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Aaron, Jeffrey M., *Attorney for Defendant-Appellee*

2. Cabou, Jean-Jacques, *Attorney for Plaintiff-Appellant*

3. Casselman, Margo R., *Attorney for Plaintiff-Appellant*

4. Christmas, Natalie, *Attorney for Defendant-Appellee*

5. Costello, David M., *Attorney for Defendant-Appellee*

6. Danneman, Alexis, *Attorney for Plaintiff-Appellant*

7. Debevoise & Plimpton, LLP, *Attorneys for Plaintiff-Appellant*

8. DeSantis, Ron, *Defendant-Appellee*

9. DeSousa, Jeffrey P., *Attorney for Defendant-Appellee*

*Warren v. DeSantis*
**DOCKET NO. 23-10459**

10. Florida Office of the Attorney General, *Attorneys for Defendant-Appellee*

11. Gray Robinson, P.A., *Attorneys for Defendant-Appellee*

12. Grouev, Zachary, *Attorney for Defendant-Appellee*

13. Hinkle, Robert L., *District Court Judge*

14. Levesque, George T., *Attorney for Defendant-Appellee*

15. Lopez, Susan, *Interested Party*

16. Moody, Ashley, *Attorney for Defendant-Appellee*

17. Newton, Matthew T., *Attorney for Plaintiff-Appellant*

18. Older, Lundy, Koch & Martino, *Attorneys for Plaintiff-Appellant*

19. O'Neil, David A., *Attorney for Plaintiff-Appellant*

20. Percival, James H., *Attorney for Defendant-Appellee*

21. Perkins Coie LLP, *Attorneys for Plaintiff-Appellant*

22. Schenck, Robert S., *Attorney for Defendant-Appellee*

23. Singer, David B., *Attorney for Plaintiff-Appellant*

24. Singh, Samantha B., *Attorney for Plaintiff-Appellant*

25. Swain, Alexandra P., *Attorney for Plaintiff-Appellant*

26. Warren, Andrew, *Plaintiff-Appellant*

27. Whitaker, Henry C., *Attorney for Defendant-Appellee*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: February 27, 2023

**DEBEVOISE & PLIMPTON LLP**

*/s/ David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant Andrew Warren*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1
ARGUMENT ....................................................................................................1
CONCLUSION .................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Holley v. Seminole Cnty. Sch. Dist.,* 755 F.2d 1492 (11th Cir. 1985) ........................ 7

*Jones v. DeSantis*, No. 19-14551-GG (11th Cir. Dec. 5, 2019), Dkt. 51 ................... 5

*Make The Road N.Y. v. Wolf*, No. 1:19-cv-02369-KBJ, 2019 WL
    13192054 (D.C. Cir. 2019) .................................................................................. 5

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ........................................................ 2

**Other Authorities**

Fla. Const. Art. V, § 17 ................................................................................................ 4

U.S. Const. amend. I. ......................................................................................... 1, 2, 7

# PRELIMINARY STATEMENT

The Governor's response confirms the need to expedite this appeal. The Governor agrees that the case presents "important, "weighty and wide-ranging" legal questions concerning the First Amendment implications of his removal authority. *See* Response at 9, 13-14. He concedes that he suspended an elected official because of what that official said to his constituents on topics of public concern. *See id.* at 1. The Governor acknowledges that the effect of this conduct was to replace the elected official whom nearly 370,000 Floridians selected as their state attorney with an unelected political supporter whom only he selected. *See id.* at 15. And the Governor's justification for that result—that the First Amendment does not apply to the speech of elected officials, and that he may remove any elected state official for any reason without regard for the Federal Constitution—reflects a breathtaking assertion of executive authority that warrants this Court's review without delay.

# ARGUMENT

1. The Governor agrees that the district court erred on important questions of law that define the scope of his constitutional authority. *See id.* at 9. Indeed, he devotes most of his response to attacking the decision he will ostensibly defend on appeal. The fact that both parties believe the district court incorrectly resolved

critical issues of law on the rights and powers of elected officials is a compelling reason for granting expedited treatment.

The Governor challenges the basic legal underpinning of the decision below, contending that the district court erred in its analysis of the Governor's removal authority and the protections afforded speech by elected officials on controversial topics. *See id.* His response indicates that he will advance in this Court the same positions he unsuccessfully argued below. Among other things, the Governor will argue that what elected officials say to their constituents is government speech lacking any First Amendment protection; that at most, such speech is subject to the framework set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), even for elected officials who do not work for the Governor; and that, in any event, federal courts have no business whatsoever "interfer[ing] in state removal proceedings" to remedy federal constitutional violations. *See* Response at 13-14.

As the Governor emphasizes, those arguments implicate "important," "weighty and wide-ranging" issues that go to the core of what elected officials can say to their constituents—and whether the Governor can undo popular elections when he favors a different viewpoint. *Id.* at 9, 13-14. Particularly in light of the Governor's increasingly expansive conception of his removal authority, as well as

his increasingly brazen willingness to use it,[1] the public interest strongly favors prompt resolution of these basic questions as quickly as possible. Until this Court resolves this case, a decision that both parties agree is legally incorrect will define how the Federal Constitution intersects with the Governor's asserted power unilaterally to remove duly elected officials and replace them with his unelected political sycophants.

2. The Governor principally argues that Mr. Warren's decisions in this litigation counsel against expedited treatment. That contention rests on a gross distortion of the record. In truth, Mr. Warren and the district court have sought to bring this matter to a speedy resolution despite the Governor's attempts at delay.

a. At every juncture in this case, Mr. Warren has pursued one consistent goal: to vindicate his federal constitutional rights as swiftly as possible. That is why he chose not to appeal the denial of his motion for a preliminary injunction and why he opposed the Governor's attempt to pursue an interlocutory appeal of issues arising from the same ruling. Both judgments were consistent with the

---

[1] *See, e.g.,* Declaration of David O'Neil in Support of Reply to Motion to Expedite ("Reply Decl.") Exhibit 1, Kate Payne, *DeSantis removes four Broward School Board Members from office, citing grand jury report*, WUSF PUBLIC MEDIA (Aug. 27, 2022) ("A majority of the Broward school board is now DeSantis appointees"); *available at* https://wusfnews.wusf.usf.edu/politics-issues/2022-08-27/desantis-removes-four-broward-school-board-members-from-office-citing-grand-jury-report.

district court's recognition that the public interest "call[ed] for proceeding to trial as soon as possible." ECF No. 68 at 28.[2]

The same objective guided Mr. Warren's response to the Governor's repeated efforts to delay the litigation by seeking protective orders preventing depositions, and then trial testimony, from himself or his chief of staff. In light of the Governor's repeated threat immediately to appeal any ruling that did not go his way, *see, e.g.,* ECF No. 132 at 22:8-11 (requesting time for appellate review should a motion to compel testimony from the Governor be granted during trial), Mr. Warren explained that the Governor's requests were frivolous but, in the interest of expediting the proceedings, did not oppose the motions. ECF No. 94 at 3-4. As Mr. Warren twice emphasized, his "focus [wa]s on continuing efficiently on the path toward trial . . . and on minimizing the harm to himself and the public that accrues with each day he remains unlawfully suspended." ECF No. 94 at 4; ECF No. 114 at 3.[3]

---

[2] All citations to "ECF" are to the district court's docket, *Warren v. DeSantis*, No. 4:22cv302-RH-MAF (N.D. Fla).

[3] As Mr. Warren explained in his motion, he has received no income during the suspension because, among other things, the Florida Constitution requires state attorneys to "devote full time to the duties of the office" and prohibits them from "engag[ing] in the private practice of law." Fla. Const. Art. V, § 17. Contrary to the Governor's assertions, the Governor did nothing during the district court proceedings to allay Mr. Warren's reasonable concern that the Governor would use

b. The Governor contends that the timing of Mr. Warren's Notice of Appeal precludes expedited treatment. That argument would be unpersuasive even in a more typical litigation. *See, e.g. Jones v. DeSantis*, No. 19-14551-GG (11th Cir. Dec. 5, 2019), Dkt. 51 (granting expedited appeal where appellants filed Notice of Appeal 28 days after the District Court issued its decision); *Make The Road N.Y. v. Wolf*, No. 1:19-cv-02369-KBJ, 2019 WL 13192054 (D.C. Cir. 2019) (granting expedited appeal of injunction where appellants filed Notice of Appeal 28 days after the District Court issued its decision). It is especially meritless in the unprecedented circumstances of this case, where the district court ruled that the Governor had violated both the Federal and Florida Constitutions, found for Mr. Warren on the facts, and yet declined to award Mr. Warren any relief. Given the unprecedented nature of the Governor's actions, the overlap between federal and state claims, and the unique posture of this proceeding, due and careful consideration of the appropriate next legal steps was necessary and warranted.

---

this constitutional provision as yet another pretext for suspension. Indeed, when the district court directly asked the Governor's counsel whether, as "the elected State Attorney," Mr. Warren, can "do anything as a lawyer" during the suspension, the Governor's counsel refused "to take a definitive position." ECF No. 59 at 51-52. The Governor continued to refuse to provide clear assurances on that point until last week, when the Governor evidently decided it was in his litigation interest to change course.

The Governor's arguments, moreover, entirely ignore the key event that transpired between the district court's decision and the filing of this appeal. In its ruling, the district court observed that "[i]f the facts matter" to the Governor, he "can simply rescind the suspension," and that if the Governor refused to do so, "it will be doubly clear that" the purported reasons for the suspension were pretextual. ECF No. 150 at 53. Heeding the court's observation, Mr. Warren gave the Governor the benefit of the doubt that he would discharge his duty to faithfully execute the law. Mr. Warren therefore wrote the Governor to request reinstatement, noting that a full and fair trial had established the falsity of the purported reasons for his suspension. *See* Motion at O'Neil Decl. Exhibit 1. Any hope that the Governor would honor the law was misplaced; the Governor responded only through a press release, *see* Motion at O'Neil Decl. Exhibit 2, and since then, the Governor has traveled the country telling crowds of supporters that he suspended Mr. Warren because he is a "woke prosecutor who happen[ed] to get elected with George Soros' campaign contributions"[4]—even as he insists in court that such considerations were irrelevant.[5] In light of his repeated flouting of

---

[4] *See* Reply Decl. Exhibit 2, Amber Jo Cooper, *DeSantis to meet with law enforcement officers in New York City, Philadelphia, Chicago*, FLORIDA'S VOICE (Feb. 20, 2023); *available at* https://flvoicenews.com/desantis-staten-island.

[5] *See, e.g.*, ECF No. 146 at 744:19-745:6.

judicial authority, the Governor's appeal to principles of equity rings particularly hollow.[6]

3. The Governor next seeks to minimize the stakes of this litigation, asserting that the case matters no "more than any ordinary employment dispute." Response at 2. That assertion merits little response.

The Governor unabashedly declares that he suspended Mr. Warren because of viewpoints Mr. Warren publicly "proclaimed" and "announced" based on his beliefs about hot-button topics. *Id.* at 1. Retaliating for those "pronouncements" presents no constitutional issue, the Governor contends, because the First Amendment does not protect speech by elected officials directed at their constituents. *Id.* at 10. The Governor readily acknowledges that his action invalidated an election in which nearly 370,000 voters chose Mr. Warren specifically because of his beliefs, replacing the voters' choice with an unelected official of the Governor's choosing. In the Governor's view, that result is perfectly

---

[6] In the same breath that he attacks Mr. Warren for acting without sufficient haste, he contends that "Mr. Warren rushed to federal court" instead of pursuing state-law remedies. Response, at 1. To the extent that is an argument that Mr. Warren was should have filed a federal lawsuit only after exhausting administrative or judicial channels at the state level, it is wrong as a matter of black letter law. *See, e.g. Holley v. Seminole Cnty. Sch. Dist.,* 755 F.2d 1492, 1501 (11th Cir. 1985) ("A plaintiff suing under § 1983 need not exhaust or make use of administrative remedies prior to, or in lieu of, bringing a claim of denial of constitutional right to federal court.")

7

fine because more people voted for him in the gubernatorial election than voted for Mr. Warren for state attorney, and because, in any event, his subsequent reelection as Governor somehow ratifies all of his previous decisions. *Id.* at 15.

In short, the Governor concedes no limits whatsoever on the scope of his removal authority beyond the political expediency of persuading the Senate to acquiesce. There is perhaps no greater argument for expediting this appeal than the Governor's insistence that this represents "democracy functioning as intended." *Id.* at 15.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

The Court should grant the Motion to Expedite and adopt Mr. Warren's proposed briefing schedule in an effort to bring a swift resolution to the important questions raised by this appeal.

Dated: February 27, 2023   Respectfully submitted,

**PERKINS COIE LLP**

Jean-Jacques Cabou
Alexis E. Danneman
2901 N. Central Avenue, Suite 2000 Phoenix, Arizona 85012
(602) 351-8000
JCabou@perkinscoie.com
ADanneman@perkinscoie.com

**OLDER, LUNDY, KOCH & MARTINO**

David B. Singer (FBN 72823)
Matthew T. Newton (FBN 111679)
1000 W. Cass St.
Tampa, FL 33606
(813) 254-8998
dsinger@olderlundylaw.com
mnewton@olderlundylaw.com

**DEBEVOISE & PLIMPTON LLP**

*/s/ David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

Alexandra P. Swain
650 California St.
San Francisco, CA 94108
(415) 738-5700
apswain@debevoise.com

Samantha B. Singh (FBN 1036051)
66 Hudson Boulevard
NY, NY 10001
(212) 909-6000
sbsingh@debevoise.com

*Counsel for Plaintiff-Appellant Andrew Warren*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,804 words as counted by the word-processing system used to prepare it.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

**DEBEVOISE & PLIMPTON LLP**

/s/ *David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW,
Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt. Parties and their counsel may access this filing through the Court's system.

                                               **DEBEVOISE & PLIMPTON LLP**

                                               /s/ *David A. O'Neil*

                                               David A. O'Neil
                                             801 Pennsylvania Ave. NW, Suite 500
                                             Washington, D.C. 20004
                                             (202) 383-8000
                                             daoneil@debevoise.com