IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

No. 23-10459-AA

———————————————

ANDREW H. WARREN,

Plaintiff - Appellant,

versus

RON DESANTIS,
Individually and in his Official Capacity as
Governor of the State of Florida,

Defendant - Appellee.

———————————————

BRIEF FOR *AMICUS CURIAE* PUBLIC RIGHTS PROJECT
IN SUPPORT OF APPELLANT

Joshua A. Rosenthal
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609

*Counsel for Amicus Curiae*

March 20, 2023

# CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(3) and 26.1-2(b), the undersigned counsel certifies that the following persons and parties may have an interest in the outcome of this case:

1. Aaron, Jeffrey M., Attorney for Defendant – Appellee

2. Cabou, Jean-Jacques, Attorney for Plaintiff – Appellant

3. Casselman, Margo R., Attorney for Plaintiff – Appellant

4. Christmas, Natalie, Attorney for Defendant – Appellee

5. Costello, David M., Attorney for Defendant – Appellee

6. Danneman, Alexis, Attorney for Plaintiff – Appellant

7. Debevoise & Plimpton, LLP, Attorneys for Plaintiff – Appellant

8. DeSantis, Ron, Defendant – Appellee

9. DeSousa, Jeffrey P., Attorney for Defendant – Appellee

10. Florida Office of the Attorney General, Attorneys for Defendant – Appellee

11. Gray Robinson, P.A., Attorneys for Defendant – Appellee

12. Grouev, Zachary, Attorney for Defendant – Appellee

13. Hinkle, Robert L., District Court Judge

14. Levesque, George T., Attorney for Defendant – Appellee

i

15.     Lopez, Susan, Interested party

16.     Moody, Ashley, Attorney for Defendant – Appellee

17.     Newton, Matthew T., Attorney for Plaintiff – Appellant

18.     Older, Lundy, Koch & Martino, Attorneys for Plaintiff – Appellant

19.     O'Neil, David A., Attorney for Plaintiff – Appellant

20.     Pagan-Figueroa, Marisa L., Attorney for Plaintiff – Appellant

21.     Percival, James H., Attorney for Defendant – Appellee

22.     Perkins Coie LLP, Attorneys for Plaintiff – Appellant

23.     Public Rights Project – Amicus Curiae

24.     Rosenthal, Joshua, Attorney for Amicus Curiae

25.     Schenck, Robert S., Attorney for Defendant – Appellee

26.     Singer, David B., Attorney for Plaintiff – Appellant

27.     Singh, Samantha B., Attorney for Plaintiff – Appellant

28.     Sundararajan, Anagha, Attorney for Plaintiff – Appellant

29.     Swain, Alexandra P., Attorney for Plaintiff – Appellant

30.     Tien, Jane, Attorney for Plaintiff  – Appellant

31.     Warren, Andrew, Plaintiff – Appellant

32.     Whitaker, Henry C., Attorney for Defendant – Appellee

Amicus Curiae Public Rights Project is a project of the Tides Center, does not have a parent company or issue stock, and amicus curiae and its counsel are aware of no publicly owned corporation with a financial interest in the outcome of this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT ..................................... i

TABLE OF AUTHORITIES ............................................................. v

INTEREST OF AMICUS CURIAE ................................................... 1

STATEMENT OF ISSUES.................................................................. 2

SUMMARY OF ARGUMENT .......................................................... 3

ARGUMENT ...................................................................................... 5

I.    BOTH THE FIRST AMENDMENT AND THE
      STRUCTURE OF THE FLORIDA CONSTITUTION
      ARE DESIGNED TO SUPPORT DEMOCRATIC
      SELF-GOVERNMENT. ............................................................ 5

II.   BY OVERLOOKING THE INTERTWINED
      NATURE OF DESANTIS'S VIOLATIONS, THE
      DISTRICT COURT RATIFIED THE GOVERNOR'S
      ABUSE OF POWER. ................................................................. 9

CONCLUSION ................................................................................. 12

CERTIFICATE OF COMPLIANCE ................................................ 13

CERTIFICATE OF SERVICE ......................................................... 14

# TABLE OF AUTHORITIES

CASES

*Ayala v. Scott*,
224 So. 3d 755 (Fla. 2017) .............................................................. 7

*Bond v. Floyd*,
385 U.S. 116 (1966) .............................................................. 8, 9, 11

*Cleveland v. State*,
417 So. 2d 653 (Fla. 1982) .............................................................. 6

*El Cenizo v. Texas*,
890 F.3d 164 (5th Cir. 2018) .......................................................... 10

*Elrod v. Burns*,
427 U.S. 347 (1976). ...................................................................... 8

*Finch v. Fitzpatrick*,
254 So. 2d 203 (Fla. 1971) .............................................................. 7

*First Nat. Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978) ........................................................................ 8

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) ...................................................................... 12

*Hardie v. Coleman*,
115 Fla. 119 (1934) ........................................................................ 6

*Houston Cmty. Coll. Sys. v. Wilson*,
142 S. Ct. 1253 (2022)..................................................................... 9

*In re Advisory Opinion*,
213 So.2d 716 (Fla. 1968) .............................................................. 6

*Moultrie v. Davis*,
498 So. 2d 993 (Fla. 4th Dist. Ct. App. 1986)................................. 6

*Mt. Healthy City School District Board of Education v. Doyle*,
429 U.S. 274 (1977) ............................................................ 4, 11, 12

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ........................................................... 8

*State ex rel. Gardner v. Boyer*,
    561 S.W. 389 (Mo. 2018) .................................................. 7

*Stromberg v. California*,
    283 U.S. 359 (1931) ........................................................... 8

*Thomas v. Collins*,
    323 U.S. 516 (1945) ......................................................... 11

*Treiman v. Malmquist*,
    342 So. 2d 972 (Fla. 1977) ............................................... 5

*Wright v. City of Miami Gardens*,
    200 So. 3d 765 (Fla. 2016) .............................................. 5

## STATUTES

Fla. Stat. Ann. § 27.14 ............................................................. 7

## OTHER AUTHORITIES

1943 H.J., Res. 322 ................................................................... 5

Ashutosh Bhagwat, *The Democratic First Amendment*, 110
    Nw. U. L. Rev. 1097, 1111-12 (2016) .......................... 11

Rep. of the Sec'y of State of the State of Fla.,
    https://ufdc.ufl.edu/UF00053732/00002/zoom/417 (1944) ............... 5

## CONSTITUTIONAL PROVISIONS

Fla. Const. Art. I, § 1 .............................................................. 5

Fla. Const. Art. IV, § 7(a) ...................................................... 6

Fla. Const. Art. V, § 17 ........................................................... 5

## INTEREST OF AMICUS CURIAE

Public Rights Project ("PRP") is a not-for-profit legal advocacy organization committed to equitable enforcement of law. Operating at the intersection of community organizing and government enforcement, PRP seeks to catalyze more rights protection by our network of nearly 200 state, local, and tribal government partners. PRP provides technical assistance, training, and legal support to drive enforcement that improves the daily lives of historically underserved groups.

There is an accelerating trend of state actors attempting to curtail the discretion of local prosecutors. These actions seek to override the efforts of those prosecutors to reflect, through words and actions, the values of the communities who elected them into office. These attacks have included legislation already passed, dozens of new bills filed during this year's legislative sessions, and unilateral executive action—headlined by Ron DeSantis's removal of Andrew Warren, at issue in this case. This state-level preemption threatens core tenets of our democracy by disallowing locally prosecutors to exercise their authority—consistent with state and federal laws—to prioritize matters that mean the most to their residents.

PRP files this brief in support of Plaintiff-Appellant not only because his rights clearly were violated by the governor's unlawful removal, but because this broader trend erodes our democracy.

1

## STATEMENT OF ISSUES

1. Whether the district court erred in holding that the Eleventh Amendment bars injunctive relief to remedy an identified federal constitutional violation because the same conduct also violates state law.

2. In the alternative, whether the district court misapplied *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), by excusing the defendant from liability on the ground that he would have made the same decision regardless of the plaintiff's protected activity when:

   a. The court specifically rejected the proffered facts and motivation the defendant pleaded as a basis for the affirmative "same-decision" defense, and the defendant specifically disavowed the facts and motivation the court attributed to him;

   b. The reason that the court concluded that the defendant would have made the same decision was illegal for other reasons; and

   c. The motivation the court attributed to the defendant itself constituted politically motivated viewpoint discrimination in violation of the First Amendment.

## SUMMARY OF ARGUMENT

The people of Hillsborough County twice elected Andrew Warren to serve as their State Attorney. Through both campaigns, he ran on a reform platform seeking to exercise his discretion fairly and to protect the civil rights of his constituents. Warren further made his opinions clear by joining with other prosecutors across the country to express opposition to laws that would interfere with Floridians' rights, including on issues of personal autonomy and dignity. Warren did not violate any ethical obligations of a prosecutor or fail to meet the requirements of his office by making these statements. Instead, he took stands to reflect the values of the people he represented and to communicate his intentions, as every other elected official does.

Because of these protected statements, Florida Governor Ron DeSantis usurped the will of the voters by suspending Warren on false pretenses. Seeking to score political points, DeSantis took out an opponent based on the views he expressed, his perspective on contentious issues, and his overall approach to being a prosecutor. The First Amendment does not permit such an outcome.

After a multi-day trial, the district court determined that DeSantis "violated the First Amendment by considering Mr. Warren's speech on matters of public concern . . . as motivating factors in the decision to suspend him." R.A. Vol. VII at

3

1278.[1] Yet the court refused to reinstate Warren, but not because the governor had a *legitimate* reason for the suspension. Rather, the court denied relief for the governor's unconstitutional conduct because the governor had *additional* unlawful motivations for the removal. *Id.* (applying *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)). Specifically, the governor ignored state-constitutional limitations on his authority to override the Hillsborough voters' choice of prosecutor on false pretenses. *Id.* In his Opening Brief, Warren ably explains how the district court erred in giving DeSantis the benefit of an affirmative defense that he neither pled nor proved, *see* Op. Br. at 35–40, and why illegitimate reasons should not immunize a clear violation of First Amendment rights, *see* Op. Br. at 42–44.

Denying relief here was particularly perverse because the First Amendment and the state-constitutional limitations on DeSantis's suspension powers serve an essential joint purpose: protecting democratic self-government. Yet the district court's decision placed them at odds. DeSantis's transgression of one cannot be permitted to excuse a violation of the other. The district court erred by ignoring the deeply intertwined nature of these protections. The decision below contributed to the disenfranchisement of Hillsborough County voters and allowed the governor to censor the speech of another duly elected official.

---

[1] Citations to "R.A. at __" refer to the Record Appendix.

## ARGUMENT

I.  **BOTH THE FIRST AMENDMENT AND THE STRUCTURE OF THE FLORIDA CONSTITUTION ARE DESIGNED TO SUPPORT DEMOCRATIC SELF-GOVERNMENT.**

1. The Florida Constitution recognizes that "[a]ll political power is inherent in the people." Fla. Const. Art. I, § 1. Accordingly, "[t]he right of the people to select their own officers is their sovereign right." *Wright v. City of Miami Gardens*, 200 So. 3d 765, 775 (Fla. 2016) (quoting *Treiman v. Malmquist*, 342 So. 2d 972, 975 (Fla. 1977)). The Florida Supreme Court "has long considered free and fair elections vital to ensuring that such political power is not usurped from the people." *Id.* at 774.

Since 1944, Florida voters have designated State Attorneys to be one of the officers whom local communities have the right to select directly.[2] In multiple revisions to the Judiciary article since, including the 1956 revision to the Judiciary Article and the 1968 major revisions to the state constitution as a whole, the people of Florida have preserved their right to elect the State Attorneys who will prosecute crimes in their communities. *See* Fla. Const. Art. V, § 17 ("In each judicial circuit a state attorney shall be elected for a term of four years.").

---

[2] *See* 1943 H.J. Res. 322 (proposing local election of State Attorneys in Art. V, § 47 to the 1885 Constitution); Rep. of the Sec'y of State of the State of Fla. 537, https://ufdc.ufl.edu/UF00053732/00002/zoom/417 (1944) (election results showing voter adoption of the amendment).

Florida law allows for certain oversight by the governor, but it is narrow and has been used sparingly. The people's power to select their officials has little substance if the official may be removed from office arbitrarily or simply because they hold differing views from state officials. Accordingly, Florida's constitution requires that a governor suspend a county official only by stating specific grounds of "malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony." Fla. Const. Art. IV, § 7(a). Both "malfeasance" and "misfeasance" have settled understandings at Florida law, requiring illegal action. *See Moultrie v. Davis*, 498 So. 2d 993, 995 (Fla. 4th Dist. Ct. App. 1986) (defining each term). "A mere arbitrary or blank order of suspension without supporting allegations of fact, even though it named one or more of the constitutional grounds of suspension, would not meet the requirements of the Constitution." *Hardie v. Coleman*, 115 Fla. 119, 128 (1934).

For officials that, like State Attorneys, necessarily exercise discretion, a governor may not suspend them due to the governor's believe that the official had not "exercised proper . . . discretion and wisdom." *In re Advisory Opinion*, 213 So.2d 716 (Fla. 1968). *See also Cleveland v. State*, 417 So. 2d 653, 654 (Fla. 1982) (affirming the State Attorney's "complete discretion in making the decision to charge and prosecute" in any particular case).

6

Likewise, while the governor has authority to temporarily reassign a State Attorney to another circuit, that reassignment must be temporary or judicially approved. Fla. Stat. Ann. § 27.14. "The purpose of the time limitation in the statute is to prevent the Chief Executive from frustrating the will of the voters of a judicial circuit by replacing any elected state attorney with one chosen by the Governor from another circuit." *Finch v. Fitzpatrick*, 254 So. 2d 203, 205 (Fla. 1971). Neither may the governor make such a reassignment arbitrarily. *See Ayala v. Scott*, 224 So. 3d 755, 758 (Fla. 2017) (permitting reassignment on a finding that the State Attorney had impermissibly refused to *ever* seek capital punishment, in contrast to Warren's permissible exercise of case-by-case discretion).

In short, the Florida constitution vests the local community with the power to choose its own prosecutor, not the governor. A governor's authority to interfere with a State Attorney's exercise of his duties is cabined. These limits respect citizens' decisions among competing visions for the exercise of prosecutorial discretion in their communities.[3]

---

[3] This structure accords with virtually all other states which vest local prosecutors with wide discretion to make charging decisions and set other policies for their offices. *See, e.g., State ex rel. Gardner v. Boyer*, 561 S.W. 389, 398-99 (Mo. 2018) (rejecting a trial-court order disqualifying the local prosecutor's office from a criminal matter, and noting the order "also affects the people of the City of St. Louis, who, by electing Relator as their [local prosecutor], decided Relator's decision-making skills—*i.e.*, her discretion—best represent their interests.") (cleaned up).

2. The First Amendment's free-speech and free-association guarantees also support self-government toward "the end that government may be responsive to the will of the people." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Stromberg v. California*, 283 U.S. 359, 369 (1931)). The "First Amendment was intended to protect[] a democratic system whose proper functioning is indispensably dependent on the unfettered judgment of each citizen on matters of political concern." *Elrod v. Burns*, 427 U.S. 347, 372 (1976). "There is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs[, which is] the type of speech indispensable to decisionmaking in a democracy." *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 776–77 (1978).

Elected officials' protected speech is particularly important to the democratic process. Officials "have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them" and "may be represented in governmental debates by the person they have elected to represent them." *Bond v. Floyd*, 385 U.S. 116, 13637 (1966). In *Bond*, the Georgia Legislature sought to override the decision of the local electorate by imposing its own views of who a state legislator should be and the opinions he was permitted to express. *Id.* at 134. The U.S. Supreme Court correctly overruled the Georgia Legislature's efforts to refuse to seat Bond, a Black civil rights activist from Atlanta who had won a

special election following a court-ordered reapportionment, because "the interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to [elected officials]." *Id.* at 136. As the Court again recognized last year, "[t]he legislature's action in *Bond* implicated not only the speech of an elected official, it also implicated the franchise of his constituents." *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1263 (2022).

To decide an elected official's retaliation claim, such as Warren's, without considering the voters who elected him thus misses a central constitutional interest. The First Amendment and the Florida Constitution share in their concern to protect voters' ability to learn from candidates what they intend to do in office and to choose the candidates who match their vision.

## II. BY OVERLOOKING THE INTERTWINED NATURE OF DESANTIS'S VIOLATIONS, THE DISTRICT COURT RATIFIED THE GOVERNOR'S ABUSE OF POWER.

Far from acknowledging the intertwined nature of First Amendment protections and popular-sovereignty principles, the district court enabled one legal violation to effectively forgive the other. This formalistic analysis stripped Hillsborough County voters of their power to decide on the viewpoint that they wished their prosecutor to adopt, effectively and incorrectly treating the governor as Warren's employer.

9

The district court found that DeSantis's named rationale for suspending Warren was baseless, and that he instead suspended Warren out of a combination of retaliatory motives and political reasons in excess of his authority. First, although DeSantis purportedly ordered the suspension to address a "blanket nonprosecution policy," the court found that "any minimally competent investigation would have shown that Mr. Warren did not have" such a policy and that DeSantis's staff ignored the indications that there was no such policy. R.A. Vol. VII at 1247. Rather, the court found that the suspension was motivated by Warren's speech and associational activities,[4] alongside DeSantis's disapproval of how Warren exercised his prosecutorial discretion and the perception that removing Warren would improve his political popularity. *Id.* at 1261. While repeatedly and emphatically recognizing that Warren's exercise of discretion and the potential political benefit to DeSantis were illegitimate grounds for suspension under Florida law, the court nonetheless treated

---

[4] The district court distinguished one of Warren's statements about prosecution of abortion crimes as a "statement of future conduct" that was therefore unprotected. *See id.* at 1266. The court provided no authority for this distinction, and it fails for two reasons. First, there is no clear distinction between a policymaker's advocacy of a position and a statement of future intent to adopt that position, such that the latter should be unprotected. *Cf. El Cenizo v. Texas*, 890 F.3d 164, 194 (5th Cir. 2018) (holding that a state could not prohibit political officials from "endorsing" a policy). Second, contrary to the district court's analogy to an employee who announced an intention to engage in prohibited, non-policy conduct, Warren's statement constituted core political speech describing actions that could be performed within his permitted scope of discretion. In fact, the court acknowledged that Warren later clarified that the statement referred to his permitted case-by case exercise of discretion. R.A. Vol. VII at 1266-1267.

10

them as separate enough from First Amendment concerns that Warren could not obtain federal-court relief. *Id.* at 1273-1278 (applying *Mt. Healthy*'s causation analysis).

This blinkered approach was reversible error. The First Amendment and Florida's structure of self-government work in concert. Speech, association, and the related "cognate" rights of the First Amendment create a political discourse that allows a community to define its own policy preferences. *See* Ashutosh Bhagwat, *The Democratic First Amendment*, 110 Nw. U. L. Rev. 1097, 1111-12 (2016) (analyzing *Thomas v. Collins*, 323 U.S. 516 (1945)). Through candidates' First Amendment-protected statements and associations, voters can identify who aligns with their preferences. Then, once a candidate is elected, they can fulfill those campaign promises. These now-elected officials can express their positions on matters of political importance both through statements and speeches, as well as through their policy decisions. *See Bond*, 385 U.S. at 136 (affirming the protection of elected officials' speech). The Florida constitution further protects their ability to serve in that office against arbitrary, politically motivated removal by the governor. The people then appropriately retain the power to evaluate the officer's performance at the next election.

Here, Warren consistently presented his prosecutorial philosophy in word and deed. Unlike an employer who has a background supervisory power over an

employee, *cf. Garcetti v. Ceballos*, 547 U.S. 410 (2006), DeSantis acted outside his legitimate authorities to control the policies of an independently elected official. Although the district court recognized that "the Governor had no authority to manage the Thirteenth Judicial Circuit State Attorney's Office or to impose discipline on Mr. Warren," R.A. Vol. VII at 1278 (distinguishing *Garcetti*), its opinion effectively ratified DeSantis's effort to do just that. In so doing, the court's ruling stripped power from the true supervisors of Warren's performance: the voters of Hillsborough County.

## CONCLUSION

Because the district court's *Mt. Healthy* analysis improperly allowed DeSantis's violation of democratic principles to excuse First Amendment retaliation, *amicus curiae* Public Rights Project urges this Court to reverse the district court and to remand with instructions to issue a permanent injunction reinstating Plaintiff-Appellant Andrew Warren.

Respectfully submitted,

*/s/ Joshua A. Rosenthal*
Joshua A. Rosenthal
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
T: 330-607-0730
josh@publicrightsproject.org

*Counsel for Amicus Curiae*

12

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). This brief is prepared in Times New Roman 14-point font and contains 2,820 words.

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

/s/ Joshua A. Rosenthal
Joshua A. Rosenthal

Dated: March 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2023, a true and correct copy of the foregoing was filed Electronically with the Clerk for the Court for the United States Court of Appeals for the Eleventh Circuit via the appellate CM/EMF system, which provides notice to all parties.

I further certify that seven paper copies identical to the electronically filed brief will be mailed to the Clerk of the Court by certified mail.


/s/ Joshua A. Rosenthal
Joshua A. Rosenthal


Dated: March 20, 2023

14