# In the United States Court of Appeals for the Eleventh Circuit

---

ANDREW WARREN,
*Plaintiff-Appellant,*

v.

RON DESANTIS,
*Defendant-Appellee.*

---

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
No. 4:22-cv-00302-RH-MAF

---

## SUPPLEMENTAL BRIEF
## OF APPELLEE

---

ASHLEY MOODY
*Attorney General of Florida*

PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

*Counsel for Defendant-Appellee*

*(Additional counsel on next page.)*

HENRY C. WHITAKER
*Solicitor General*
DANIEL WILLIAM BELL
JEFFREY PAUL DESOUSA
*Chief Deputy Solicitors General*
DAVID M. COSTELLO
*Deputy Solicitor General*
ROBERT S. SCHENCK
*Assistant Solicitor General*

GEORGE T. LEVESQUE
JEFF AARON

GrayRobinson, P.A.
301 South Bronough Street
Ste. 600
Tallahassee, FL 32302
(850) 577-9090
*george.levesque@gray-robinson.com*

*Counsel for Defendant-Appellee*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Defendant-Appellee certifies that, to the best of his knowledge, the following is a complete list of interested persons:

1.      Aaron, Jeffrey M.,

2.      Abel, Richard,

3.      Albinson, Jeff,

4.      Alfieri, Anthony,

5.      Anstead, Harry Lee,

6.      Arenella, Peter,

7.      Austin, Jr., Roy L.,

8.      Bailey, Andrew,

9.      Bakkedahl, Tom,

10.     Ball, David,

11.     Ballard, Matthew J.,

12.     Bandes, Susan,

13.     Barakat, Charbel,

14.     Barnett, Martha,

15.     Bartlett, Bruce L.,

16.     Basford, Larry,

17.     Beltran, Michael P.,

18.    Bennett, Paul,

19.    Bentley III, A. Lee,

20.    Benza, Michael,

21.    Berkowitz, Herbert M.,

22.    Bernabe, Alberto,

23.    Bernstein, Anita,

24.    Bernstein, Lauren Jacobson,

25.    Bhabha, Ishan K.,

26.    Bilchik, Shay,

27.    Bondi, Pamela,

28.    Boone, Larry,

29.    Bowling, Bret,

30.    Boyd, Bobbi Jo,

31.    Boyer, Bruce,

32.    Brackney, Ph.D., RaShall,

33.    Brady, Scott,

34.    Brann, Joseph,

35.    Brewer, Jr., Robert,

36.    Bridge, Bobbe J.,

37.    Broderick, Katherine,

38.     Brodsky, Ed,

39.     Broussard, Robert L.,

40.     Buckler, Carol,

41.     Bueermann, Jim,

42.     Buhai, Sande,

43.     Bulman-Pozen, Jessica,

44.     Burbank, Chris,

45.     Burkoff, John,

46.     Burnele, Powell,

47.     Butterworth, Jr., Robert A.,

48.     Cabou, Jean-Jacques,

49.     Cabral, Andrea J.,

50.     Carlisle, Jay,

51.     Carr, Christopher M.,

52.     Casselman, Margo R.,

53.     Cassidy, Michael,

54.     Cerniglia, Christine,

55.     Chemerinsky, Erwin,

56.     Chin, Doug,

57.     Chin, Gabriel,

58.     Christine, Bobby,

59.     Christmas, Natalie,

60.     Clayton, Jerry,

61.     Cochran, Donald,

62.     Coker, Donna Kay,

63.     Colbert, Doug,

64.     Cole, Liz Ryan,

65.     Coleman, Russell,

66.     Colton, Bruce,

67.     Cooper, Benjamin,

68.     Corcoran, Anne,

69.     Costello, David M.,

70.     Cox, Brendan,

71.     Cummings, Scott,

72.     Danneman, Alexis E.,

73.     Davis, Angela,

74.     Deitch, Brittany,

75.     DeSantis, Ron,

76.     DeSousa, Jeffrey P.,

77.     Devereaux, Damon,

78.     Dillof, Anthony,

79.     Dressler, Joshua,

80.     Dunavant, Michael,

81.     Eaton, Jr., O.H.,

82.     Elliot, Chris,

83.     Emerson, Robert,

84.     Epstein, Jules,

85.     Evans, Robert Wayne,

86.     Ewing, Charles,

87.     Fagan, Jeffrey,

88.     Feldman, Heidi Li,

89.     Fields, Lazaro,

90.     Fields, Shawn,

91.     Fitch, Lynn,

92.     Fitzpatrick, Hon. Martin A.,

93.     Florida Sheriffs Association,

94.     Flowers, Roberta,

95.     Fox, Amira D.,

96.     Franklin, Neil,

97.     Freed, David,

98.    Freidin, Ellen,

99.    Furgeson, Jr., William Royal

100.   Galoob, Stephen,

101.   Gaiser, T. Elliot,

102.   Gamaldi, Joe,

103.   Garcetti, Gil,

104.   Garnett, Stan,

105.   Gentithes, Michael,

106.   Gertner, Nancy,

107.   Gladson, William,

108.   Godsoe, Cynthia,

109.   Goldstock, Ronald,

110.   Gossett, Christian,

111.   Graziano, Kristin,

112.   Green, Bruce A.,

113.   Greenbaum, Arthur,

114.   Griffin, Lissa,

115.   Griffin, Tim,

116.   Grodin, Joseph R.,

117.   Grosso, Catherine,

118.  Grouev, Zachary P.,

119.  Gundlach, Jennifer,

120.  Haas, Brian,

121.  Halle, Kris Anne,

122.  Harris, David,

123.  Harshbarger, Scott,

124.  Hawkes, Paul,

125.  Hellman, Lawrence,

126.  Herdman, Justin,

127.  Hessick, Carissa Byrne,

128.  Hicks, Jason,

129.  Hilgers, Michael T.,

130.  Hill, Jerry,

131.  Hinkle, Hon. Robert L.,

132.  Hoag-Fordjour, Alexis,

133.  Holder, Gregory Paul,

134.  Howell, Babe,

135.  Hull, Bryan David,

136.  Hutchinson, Ed,

137.  Hyde, Thomas,

138. Jackley, Marty,

139. Jaroslaw, Ilene,

140. Joyal, Moe,

141. Joyal, Ursula,

142. Keller, Zachery, P.,

143. Kelly, Charles B.,

144. King, Adam,

145. King, Brad,

146. Knudsen, Austin,

147. Kobach, Kris,

148. Kobil, Daniel,

149. Koerner, Matthew R.,

150. Kollar, Justin F.,

151. Kramer, Brian,

152. Kronick, Katie,

153. Kruse, Katherine R.,

154. Larizza, R.J.,

155. Lassar, Scott,

156. Laurin, Jennifer,

157. Lawson, Sara Alpert,

158.    Levens, William P.,

159.    Levenson, Laurie,

160.    Levesque, George T.,

161.    Levine, Kay,

162.    Lewis, Timothy K.,

163.    Listenbee, Robert L.,

164.    Little, Rory,

165.    Lopez, Maria Chapa,

166.    Lubet, Steven,

167.    Madden, Ginger Bowden,

168.    Madrid, Patricia A.,

169.    Margulies, Peter,

170.    Markovic, Milan,

171.    Marshall, Steve,

172.    Mather, Lynn,

173.    Matsuoka, Tania C.,

174.    McCollum, Bill,

175.    McFadden, Garry, L.

176.    McMunigal, Kevin,

177.    Medwed, Daniel,

178.   Meggs, William N.,

179.   Melton III, Howell Webster,

180.   Menendez, Jr., Manuel,

181.   Menkel-Meadow, Carrie,

182.   Metzger, Pamela,

183.   Millemann, Michael,

184.   Miller, Eric,

185.   Minkoff, Ronald,

186.   Miyares, Jason,

187.   Moore, Richard,

188.   Morris, Chris,

189.   Morrisey, Patrick,

190.   Morrison, Caren Myers,

191.   Murrill, Liz,

192.   Needham, Carol,

193.   Newborn, Steven A.,

194.   Newton, Matthew T.,

195.   Norton, Jerry,

196.   Nunn, Kenneth,

197.   O'Connor, Michol,

198.   O'Neil, David A.,

199.   O'Neill, Jerome,

200.   O'Neill, Timothy,

201.   Orenstein, Aviva Anne,

202.   Ortiz, Carmen M.,

203.   Ouziel, Lauren,

204.   Pariente, Barbara,

205.   Parsons, Ron,

206.   Paxton, Ken,

207.   Pearce, Russell,

208.   Pearson, Melba,

209.   Percival, III, James H.,

210.   Perlin, Michael,

211.   Phillips, Channing,

212.   Podgor, Ellen S.,

213.   Powell, Burnele

214.   Pridgen, Abdul D.,

215.   Quick, Albert T.,

216.   Quick, Brenda,

217.   Quince, Peggy,

218.    Rapoport, Nancy,

219.    Regalado, Vic,

220.    Reid, Teresa Jean,

221.    Reiner, Ira,

222.    Reyes, Sean D.,

223.    Ricardo, Kim D.,

224.    Robbins, Ira,

225.    Roberts, Jenny,

226.    Robertson, Andra,

227.    Robson, Ruthann,

228.    Rosen, Robert,

229.    Rosenthal, Stephen,

230.    Ross, Josephine,

231.    Rossman, David,

232.    Rozelle, Susan,

233.    Rudovsky, David,

234.    Safavi, Sherry,

235.    Saito, Natsu,

236.    Salcines, E.J.,

237.    Saltzburg, Stephen A.,

238.    Sammons, Jack,

239.    Schaefer, Paula,

240.    Scheindlin, Shira A.,

241.    Schenck, Robert S.

242.    Schnorrenberg, Sarah B,

243.    Scott, McGregor,

244.    Shores, R. Trent,

245.    Shorstein, Harry L.,

246.    Siegel, David,

247.    Singer, David B.,

248.    Singh, Samantha B.,

249.    Singleton, David A.,

250.    Sloan, Cliff,

251.    Smith, Abbe,

252.    Sonnett, Neal R.,

253.    Southerland, Vincent,

254.    Spagnoletti, Robert J.,

255.    Spitzer, Hugh D.,

256.    Stamper, Norm,

257.    Stempel, Jeff,

258.  Stephens, Darrel,

259.  Strait, John,

260.  Strang, Dean,

261.  Sullivan, Ron,

262.  Suvall, Cara,

263.  Swain, Alexandra P.,

264.  Swan, Sarah L.,

265.  Synan, Tom,

266.  Tanaka, Elizabeth,

267.  Tarr, G. Alan,

268.  Tibbles, Lance,

269.  Tierney, James,

270.  Town, Jay,

271.  Tremblay, Paul,

272.  Tribe, Laurence H.,

273.  Troy, Anthony F.,

274.  Turner, Kevin,

275.  Turner, Tim,

276.  Unikowsky, Adam G.,

277.  Unikowsky, Lauren Jacobson,

278.    Uphoff, Rodney,

279.    Vance, Cyrus R.,

280.    Varadi, Benjamin,

281.    Walsh, John,

282.    Ward, Dennis W.,

283.    Warren, Andrew H.,

284.    Warren, Jeffrey Wayne,

285.    Waurishuk, Jim,

286.    Waxman, Seth,

287.    Webb, Jeanne,

288.    Weich, Ronald,

289.    Weinberg, Jr., Morris,

290.    Weiss, Jonathan A.,

291.    West, Chris,

292.    Whitaker, Henry C.,

293.    Wilson, Alan,

294.    Wilson, Jodi,

295.    Woods, Jordan Blair,

296.    Wright, Ron,

297.    Wynbrandt, Kathryn L.,

298.   Yaroshefsky, Ellen,

299.   Zitrin, Richard

# TABLE OF CONTENTS

Table of Contents............................................................................................ i

Table of Citations .......................................................................................... ii

Argument........................................................................................................ 1

Federal courts lack jurisdiction to order the reinstatement of a suspended state officer.
........................................................................................................................ 1

    A.    As the Supreme Court recognized in *Sawyer* and *Walton*, federal courts have historically—and still today—lacked authority to order the reinstatement of a state officer. ................................................... 2

    B.    The Supreme Court's subsequent decisions do not compel a different result. ........................................................................................... 8

Conclusion.................................................................................................... 12

Certificate of Compliance............................................................................. 14

Certificate of Service ................................................................................... 15

# TABLE OF CITATIONS

**Cases**                                                  **Page(s)**

*Ala. Pub. Serv. Comm'n v. S. Ry. Co.,*
341 U.S. 341 (1951) ................................................................ 7

*The Attorney-General v. Utica Ins. Co.,*
2 Johns. Ch. 371 (N.Y. Ch. Ct. 1817) ........................................... 6

*Baker v. Carr,*
369 U.S. 186 (1962) ......................................................... 3, 9, 10

*Bond v. Floyd,*
385 U.S. 116 (1966) .......................................................... 1, 8, 9

*Brett v. Jefferson Cnty.,*
123 F.3d 1429 (11th Cir. 1997) ................................................ 12

*Brown v. Ga. Dep't of Revenue,*
881 F.2d 1018 (11th Cir. 1989) ................................................ 10

*Cochran v. McCleary,*
22 Iowa 75 (1867) ............................................................... 6

*Comm. on Judiciary of U.S. House of Representatives v. Miers,*
542 F.3d 909 (D.C. Cir. 2008) ................................................. 12

*Ex parte Young,*
209 U.S. 123 (1908) ......................................................... 2, 10

*Fineran v. Bailey,*
2 F.2d 363 (5th Cir. 1924) ..................................................... 3, 5

*Gentry-Futch Co. v. Gentry,*
106 So. 473 (Fla. 1925) ......................................................... 5

*Georgia v. Stanton,*
73 U.S. (6 Wall.) 50 (1867) ................................................... 3, 5

*Gregory v. Ashcroft,*
501 U.S. 452 (1991) .......................................................... 8, 11

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
   527 U.S. 308 (1999) ................................................................. 2, 6, 11, 12

*Hagner v. Heyberger,*
   7 Watts & Serg. 104 (Pa. 1844) ......................................................... 6, 7

*In re Sawyer,*
   124 U.S. 200 (1888) .................................................................. 3, 4, 5, 6

*Lane v. Cent. Ala. Cmty. Coll.,*
   772 F.3d 1349 (11th Cir. 2014) ........................................................... 10

*Liu v. SEC,*
   591 U.S. 71 (2020) ........................................................................... 11

*Mallory v. Norfolk S. Ry. Co.,*
   600 U.S. 122 (2023) ........................................................................... 9

*Morales Feliciano v. Rullan,*
   378 F.3d 42 (1st Cir. 2004) ............................................................... 11

*Moulton v. Reid,*
   54 Ala. 320 (1875) ............................................................................. 7

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,*
   798 F.3d 125 (2d Cir. 2015) ............................................................... 12

*Nixon v. United States,*
   506 U.S. 224 (1993) ........................................................................... 8

*Powell v. McCormack,*
   395 U.S. 486 (1969) ........................................................................... 8

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
   490 U.S. 477 (1989) ........................................................................... 9

*Sampson v. Murray,*
   415 U.S. 61 (1974) ............................................................................. 3

*Stainback v. Mo Hock Ke Lok Po,*
   336 U.S. 368 (1949) ......................................................................... 12

*State ex rel. McCaffery v. Aloe,*
    54 S.W. 494 (Mo. 1899) ................................................................. 3

*State v. Chambers,*
    220 P. 890 (Okla. 1923) ............................................................... 4

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................. 9, 10

*Taggart v. Lorenzen,*
    139 S. Ct. 1795 (2019) ............................................................... 11

*Tappan v. Gray,*
    9 Paige Ch. 507 (N.Y. Ch. Ct. 1842) .......................................... 6

*Taylor v. Kercheval,*
    82 F. 497 (C.C.D. Ind. 1897) ...................................................... 3

*Walton v. House of Representatives of,*
    *Okla.*, 265 U.S. 487 (1924) ............................................... 1, 3, 4, 5

*Warren v. DeSantis,*
    365 So. 3d 1137 (Fla. 2023) ........................................................ 5

*Webster v. Fall,*
    266 U.S. 507 (1925) .................................................................... 9

*Wilson v. North Carolina,*
    169 U.S. 586 (1898) .................................................................... 3

## Statutes

42 U.S.C. § 2000e-5 .......................................................................... 11

Fla. Const. Art. IV, § 7 ....................................................................... 1

## Other Authorities

Eugene McQuillin, *A Treatise on the Law of Municipal Corporations* (1911) ......................... 3

Howard Clifford Joyce, *A Treatise on the Law Relating to Injunctions* (1909) ..................... 3

James L. High, *Treatise on the Law of Injunctions* (2d ed. 1880) ............................................ 3

John Norton Pomeroy, *A Treatise on Equity Jurisprudence* (4th ed. 1919) ......................... 3

Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* (2d ed. 1840) ....... 3

Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, April 1775, https://founders.archives.gov/documents/Adams/06-02-02-0072-0015 ...... 6

Nikolas Bowie, *Why the Constitution was Written Down*, 71 Stan. L. Rev. 1397 (2019) ..... 6

W. S. Holdsworth, *English Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382 (1922) ...................................................................................................................... 6

## ARGUMENT

### Federal courts lack jurisdiction to order the reinstatement of a suspended state officer.

The Court's April 23, 2024, order requests supplemental briefing on the federal courts' power to award equitable relief here, given the Supreme Court's holding that "the courts of the United States, sitting as courts of equity, [are] without jurisdiction over the appointment and removal of state officers." *Walton v. House of Representatives of Okla.*, 265 U.S. 487, 490 (1924). The Court also sought briefing on the interaction between that traditional limit on federal courts' equitable authority and *Bond v. Floyd*, 385 U.S. 116 (1966). As the Governor asserted both in the district court, App. 141–43, and before the panel, Ans. Br. 50–51, federal courts lack authority to intervene in matters concerning the appointment and removal of state officers. *Bond v. Floyd* does not hold otherwise.

For background, Plaintiff Andrew Warren seeks injunctive and declaratory relief from Governor Ron DeSantis's executive order suspending Warren as one of Florida's state attorneys, claiming that the suspension violated Warren's First Amendment rights. In Florida, the Governor suspends state officials who have committed misconduct, and the Senate is invested with authority to decide whether a suspended official should be finally removed from office. *See* Fla. Const. Art. IV, § 7. Warren seeks to have the federal courts reinstate him as a public officer of Florida, even though the Florida Senate has not yet conducted a trial to decide whether Warren should be removed from office.

The district court never addressed the Governor's argument that it lacked equitable authority to reinstate Warren. *See* App. 151–78. Instead, the district court denied Warren's request after trial because the Governor would have suspended Warren even without any allegedly protected speech. App. 1278–79. The panel, for its part, contended that federal courts have such equitable authority based on *Ex parte Young*, 209 U.S. 123 (1908). Op.48 n.10. Ultimately, the panel vacated and remanded the district court's order denying reinstatement. Op.48. The Governor sought en banc review of the panel's decision.

A state's power to control the appointment and removal of its own officers is fundamental to its sovereignty. The Supreme Court has therefore long recognized that federal courts lack equitable authority to second-guess a state's exercise of that power. Here, Warren's request for a federal court to reinstate him while the state still considers whether to remove him would be beyond that authority. The Court should affirm the district court's decision to deny relief.

A. **As the Supreme Court recognized in *Sawyer* and *Walton*, federal courts have historically—and still today—lacked authority to order the reinstatement of a state officer.**

To award Warren a remedy here would transgress the historical limits of the federal courts' equitable powers. Those powers are limited by the types of relief "traditionally accorded by courts of equity" at the Founding. *Grupo Mexicano de Desarrollo S.A.*

*v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999). And back then—as many treatises[1]

and cases explained[2]—"federal equity power could not be exercised to enjoin a state

proceeding to remove a public officer." *Baker v. Carr*, 369 U.S. 186, 231 (1962); *see also*

*Fineran v. Bailey*, 2 F.2d 363, 363 (5th Cir. 1924) ("It is well settled by the decisions of

the Supreme Court that a District Court of the United States has no jurisdiction over

the appointment and removal of public officers."). As one nineteenth-century com-

mentator put it, "[n]o principle of the law of injunctions, and perhaps no doctrine of

equity jurisprudence[,] is more definitely fixed or more clearly established than that

courts of equity will not interfere by injunction to determine questions concerning the

appointment or election of public officers or their title to office." 2 James L. High,

*Treatise on the Law of Injunctions* § 1312 (2d ed. 1880).

Given "the historical denial of all equitable relief by the federal courts" in the

political-removal context, *Sampson v. Murray*, 415 U.S. 61, 83 (1974), courts in equity

have been extraordinarily hesitant to "invade the domain . . . of the executive" by

---

[1] 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880); 1 Howard
Clifford Joyce, *A Treatise on the Law Relating to Injunctions* § 55 (1909); 4 John Norton
Pomeroy, *A Treatise on Equity Jurisprudence* § 1760 (§ 337) (4th ed. 1919); 2 Eugene
McQuillin, *A Treatise on the Law of Municipal Corporations* § 582 & n.98 (1911); *see also*
Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof* §§ 467–70, 553 (2d
ed. 1840).

[2] *E.g.*, *In re Sawyer*, 124 U.S. 200, 210 (1888); *Walton v. House of Representatives of
Okla.*, 265 U.S. 487, 490 (1924); *Wilson v. North Carolina*, 169 U.S. 586, 593 (1898); *Taylor
v. Kercheval*, 82 F. 497, 499 (C.C.D. Ind. 1897); *State ex rel. McCaffery v. Aloe*, 54 S.W. 494,
496 (Mo. 1899); *see also Georgia v. Stanton*, 73 U.S. (6 Wall.) 50, 71 & n.20 (1867).

reinstating a removed official, *In re Sawyer*, 124 U.S. at 210, and federal courts are "particularly . . . without jurisdiction over the appointment and removal of state officers," *Walton*, 265 U.S. at 490 (citing *In re Sawyer*, 124 U.S. at 210).

The Supreme Court's decision in *Sawyer* exemplifies this traditional rule. There, a locally elected officer sought an injunction barring a city council and mayor from removing him. 124 U.S. at 202–04. After the council and mayor were held in contempt of that injunction, the Court issued a writ of habeas corpus to vacate their convictions because the injunction was issued without jurisdiction. *Id.* at 207–09. The Court explained that a federal court in equity "has no jurisdiction over the appointment and removal of public officials," *id.* at 212, and has even less power to interfere "with the appointment or removal of [state] public officers," *id.* at 220. In dissent, Justice Harlan argued that the Court was wrong to conclude that federal courts may not entertain injunctive suits for conduct that "will violate rights secured to [the plaintiff] by the constitution of the United States," *id.* at 224 (Harlan, J., dissenting)—a view the *Sawyer* majority rejected.

*Walton* is even more closely on point. There, Oklahoma's governor had sought an injunction against state impeachment proceedings because the legislators allegedly had "wrongful motives and prejudice" that would have denied him equal protection and due process of the law. *Walton*, 265 U.S. at 489. Governor Walton was found guilty of the misconduct and removed from office, *id.*, and the Oklahoma Supreme Court upheld the validity of the impeachment as a matter of state law, *State v. Chambers*, 220 P.

890, 893 (Okla. 1923). The Supreme Court held that the district court had correctly dismissed Governor Walton's federal suit. "[C]ourts of the United States," it observed, "sitting as courts of equity" are "without jurisdiction over the appointment and removal of state officers," *Walton*, 265 U.S. at 490 (citing *Sawyer*, 124 U.S. at 210).

That holding controls here. Warren's challenge to Florida's suspension-and-removal process, which mirrors the state impeachment process at issue in *Walton*, "is no case for" a federal "court of equity"; it is a state "case for a *quo warranto*,"[3] or a defense at his removal hearing before the Florida Senate. *Georgia v. Stanton*, 73 U.S. (6 Wall.) 50, 59 (1867); *see also Fineran*, 2 F.2d at 363. And just as in *Walton*, in this case too Florida's highest court denied Warren a writ of quo warranto to contest the validity of his suspension under state law. *See Warren v. DeSantis*, 365 So. 3d 1137, 1138 (Fla. 2023).

The rule that federal courts have no equitable power to interfere with the appointment and removal of state officers has deep historical roots that trace to the Founding. *See Sawyer*, 124 U.S. at 212. "No English case has been found of a bill for an injunction to restrain the appointment or removal of a municipal officer." *Id.* At no point has Warren identified a case in which the English Court of Chancery granted reinstatement to public officers. The total absence of any historical grounding for the relief Warren seeks demonstrates that it "was unknown to traditional equity practice,"

---

[3] Quo warranto is a legal remedy, as opposed to an equitable remedy, *Gentry-Futch Co. v. Gentry*, 106 So. 473, 476 (Fla. 1925), and in Florida is used "to challenge the 'power and authority' of a constitutional officer, such as the Governor," *Warren v. DeSantis*, 365 So. 3d 1137, 1142 (Fla. 2023).

*Grupo Mexicano*, 527 U.S. at 327, divorced from the "jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73)," *id.* at 318–19 (quotation omitted). That alone means that the federal courts have no authority to grant such a remedy. *See id.* at 332.

But there is more than the absence of precedent here. The Supreme Court in *Sawyer* also pointed to a long line of early post-Founding English and state cases denying equitable jurisdiction in cases seeking to adjudicate the appointment or removal of officers. *See* 124 U.S. at 212 (citing *Att'y General v. Earl of Clarendon*, 34 Eng. Rep. 190, 193 (High Ct. of Ch. 1810); *Tappan v. Gray*, 9 Paige Ch. 507, 509 (N.Y. Ch. Ct. 1842); *Hagner v. Heyberger*, 7 Watts & Serg. 104, 104 (Pa. 1844); *Cochran v. McCleary*, 22 Iowa 75, 86, 89 (1867)); *cf. The Attorney-General v. Utica Ins. Co.*, 2 Johns. Ch. 371, 391 (N.Y. Ch. Ct. 1817) (refusing to exercise equity jurisdiction over a case involving a defendant's right to exercise a banking privilege under state law).[4] In *Hagner*, for instance, the Supreme Court

---

[4] Although *Clarendon* and some other cases cited by *Sawyer* involved corporate officers, those legal entities back then were treated more like governments and public entities than modern-day corporations. Colonial governments, for instance, were created through corporate charters, with "shareholders" acting like modern-day voters and voting for corporate boards that looked like modern-day state and local governments. Nikolas Bowie, *Why the Constitution was Written Down*, 71 Stan. L. Rev. 1397, 1416–21 (2019); *see also* Letter from John Adams to the Inhabitants of the Colony of Massachusetts-Bay, April 1775, https://founders.archives.gov/documents/Adams/06-02-02-0072-0015. And as the *Hagner* court noted, limits on equitable jurisdiction that applied to "private corporations" apply "à fortiori" to "the case of a public officer of a municipal character." *Hagner*, 7 Watts & Serg. at 105; *see also* W. S. Holdsworth, *English*

of Pennsylvania dismissed a case seeking to enjoin a defendant from acting as school director of a school district because he was elected to another office. *Hagner*, 7 Watts & Serg. at 104. The court reasoned that it possessed no more power than an English chancery court, and that because "even an English court of chancery would not sustain the injunction proceeding to try the election or [removal] of corporators of any description," it could not either. *Id.* at 106–07. Instead, the proper remedy was that provided by state law. *Id.* at 107–08 ("It is not for us to be wiser than the laws, and for imaginary inconveniences to abrogate or evade the express enactments of our Legislature."); *see also Moulton v. Reid*, 54 Ala. 320, 328 (1875). Here, Warren has already unsuccessfully availed himself of his remedy in the Florida Supreme Court, and has not yet bothered to contest his suspension in the Florida Senate as he is entitled to do.

This historical limit on federal equitable authority also preserves "the scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 349 (1951). Federal courts are loath to interfere with the internal functioning of state government. "[T]he authority of the people of the States to determine the qualifications of" state officers "goes beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for a sovereign entity" that lies at "the heart of representative

---

*Corporation Law in the 16th and 17th Centuries*, 31 Yale L.J. 382, 383–84 (1922) (noting that for both public and private corporations, "creation by and subordination to the state are the only terms upon which the existence of large associations of men can be safely allowed to lead an active life").

government." *Gregory v. Ashcroft*, 501 U.S. 452, 460, 463 (1991). Any judicial interference with those officers would create "chaos" in part because "[t]he legitimacy of any successor, and hence his effectiveness, would be impaired severely, not merely while the judicial process was running its course." *Nixon v. United States*, 506 U.S. 224, 236 (1993). That equitable limit on interfering with the appointment and removal of state officers properly respects a state's power to govern itself.

### B. The Supreme Court's subsequent decisions do not compel a different result.

Nothing in subsequent Supreme Court cases upsets this traditional rule or disturbs the holdings in *Walton* and *Sawyer*. No Supreme Court decision has ever overruled those precedents or suggested they have lost their force.

Warren has heavily relied upon *Bond v. Floyd*, in which the Supreme Court held that the Georgia legislature violated the First Amendment in refusing to seat a newly elected member for engaging in anti-Vietnam War speech while the member-elect was a private citizen. 385 U.S. at 137. But that holding does not directly speak to the principles applicable to suspending a state officer for his conduct while in office, which is the issue here. *Cf. Powell v. McCormack*, 395 U.S. 486, 507 n.27 (1969) (holding that a prospective member of Congress was unlawfully excluded from being seated, but reserving the question of whether the same principles would apply to a member expelled from office). In any event, *Bond* did not grapple with the limits on the federal courts' remedial authority discussed by *Walton* or *Sawyer*. At most, *Bond* represents an implicit

"drive-by jurisdictional ruling[]" that carries no "precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). The issue of the equitable authority of the federal courts "merely lurk[ed] in the record," so *Bond*'s holding cannot "be considered as having . . . constitute[d] precedent[]" on the question. *Webster v. Fall*, 266 U.S. 507, 511 (1925). The drive-by nature of *Bond* is underscored by the Supreme Court noting that Georgia expressly conceded that federal courts would have equitable authority to reinstate officers where removal was done on "clearly unconstitutional grounds." *Bond*, 385 U.S. at 130. Even if *Bond* were in implicit tension with *Walton* and *Sawyer*, those decisions would be the directly on-point cases, and should be followed by this Court unless and until the Supreme Court overrules them. *See, e.g.*, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (cautioning against lower courts holding that subsequent Supreme Court cases "implicitly overruled" earlier precedent). "[A] lower court 'should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Id.* (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

*Baker* did not address this issue either. In *Baker*, the Supreme Court held that legislative apportionment was not a "political question" that it could not adjudicate under Article III. 369 U.S. at 198–99, 209. That issue of constitutional justiciability is distinct from the Governor's argument here—which is about the Court's equitable authority under congressional enactments to reinstate a state officer like Warren. In fact, *Baker* approved and distinguished cases about traditional limits on equitable jurisdiction,

9

including *Walton* and *Sawyer*, on precisely this basis. *Id.* at 231. It acknowledged that "federal equity power could not be exercised to enjoin a state proceeding to remove a public officer," and noted that its case was different because those cases involved a "traditional limit upon equity jurisdiction [by virtue of a congressional enactment], and not upon federal courts' power [under Article III] to inquire into matters of state governmental organization," such as legislative apportionment. *Id.* This case is thus governed by *Walton* and *Sawyer*, not *Baker*. *Id.* at 232.

Nor does *Ex parte Young* or any of the other cases the panel cited stand for the proposition that "[t]he Eleventh Amendment permits federal courts to remedy First Amendment violations" through reinstatement of a state officer. Op.48 n.10. All of these cases addressed only whether the Eleventh Amendment bars a claim against state officials for injunctive relief; none of them considered whether the federal courts had equitable authority—separate and apart from the Eleventh Amendment—to order reinstatement of public officers. *Ex parte Young*, 209 U.S. at 159–60; *Brown v. Ga. Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989); *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014). Those are different questions. Any tension between *Walton* and the *Ex parte Young* line of cases the panel cited is no different than the tension with *Bond*, as their drive-by jurisdictional rulings do not constitute precedent on the point. *Steel Co.*, 523 U.S. at 91.

That this case involves a cause of action under Section 1983 changes nothing. Section 1983 presents no "clear statement" augmenting traditional equitable powers

sufficient to overcome the presumption against upsetting the federal-state balance stemming from interference with state sovereignty. *See Gregory*, 501 U.S. at 463–64 (recognizing that "the authority of the people of the States to determine the qualifications of their *most important government officials . . .* lies at the heart of representative government" (emphasis added) (citation omitted)). Because interference with a state's ability to "defin[e] their constitutional officers would upset the usual constitutional balance of federal and state powers," *id.* at 460 (citation omitted), Congress "must make its intention to do so unmistakably clear." *Id.* at 460–61; *cf. also* 42 U.S.C. § 2000e-5(g)(1)–(2)(a) (expressly providing for the power of "reinstatement" in cases of discrimination). No such statement appears in Section 1983. Indeed, no statement regarding the limits of federal equity jurisdiction appears in the text of Section 1983—so the holding in *Grupo Mexicano* applies with full force. *See Morales Feliciano v. Rullan*, 378 F.3d 42, 49–50 (1st Cir. 2004) (applying *Grupo Mexicano* to equitable remedies under Section 1983). Despite Warren's claim that Congress intended Section 1983 to provide for reinstatement, Reply Br. 3 n.2, Section 1983's general grant of equitable powers brings the "old soil" with it and "incorporate[s] the traditional standards in equity practice." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (equitable authority under bankruptcy statute); *see also Liu v. SEC*, 591 U.S. 71, 79–80 (2020) (equitable authority under securities statute); *cf. Grupo Mexicano*, 527 U.S. at 326 (distinguishing a prior case where a statute explicitly authorized tax injunctions).

Finally, *Grupo Mexicano* also refutes Warren's argument that the merger of law and equity renders *Walton* and *Sawyer* defunct. Reply Br. 3 n.2. The "traditional principles of equity jurisdiction"—whether incorporated into the Judiciary Act of 1789 or the similarly generic grant of equitable authority under Section 1983—continue to govern because "merger did not alter substantive rights," and the "substantive principles of Courts of Chancery remain unaffected." *Grupo Mexicano*, 527 U.S. at 319, 322 (quoting *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949)). Put differently, merger did not expand federal equitable power; it simply empowered one set of courts to issue both legal and equitable remedies. Just as the ahistorical type of relief rejected in *Grupo Mexicano* extended beyond the historical equitable limits of the federal courts, *id.* at 322, so too does Warren's requested intrusion into state sovereignty.[5]

## CONCLUSION

This Court should affirm the denial of equitable relief to Warren.

---

[5] This is also true for Warren's claim of declaratory relief, which is an equitable remedy that is the "functional equivalent of an injunction." *See Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008); *cf. also Brett v. Jefferson Cnty.*, 123 F.3d 1429, 1435 n.14 (11th Cir. 1997) (stating that "declaratory relief" is an equitable remedy); *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (noting that declaratory relief closely resembles traditional equitable remedies).

Dated: May 3, 2024

Respectfully submitted,

ASHLEY MOODY
  *Attorney General of Florida*

*/s/ Henry C. Whitaker*

GEORGE T. LEVESQUE
JEFF AARON

HENRY C. WHITAKER
  *Solicitor General*
DANIEL WILLIAM BELL
JEFFREY PAUL DESOUSA
  *Chief Deputy Solicitors General*
DAVID M. COSTELLO
  *Deputy Solicitor General*
ROBERT SCOTT SCHENCK
  *Assistant Solicitor General*

GrayRobinson, P.A.
301 South Bronough Street, Ste. 600
Tallahassee, FL 32302
(850) 577-9090
*george.levesque@gray-robinson.com*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

*Counsel for Defendant-Appellee*

*Counsel for Defendant-Appellee*

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the page-volume limits set out in this Court's order requesting supplemental briefing.

2.    This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Henry C. Whitaker*
Solicitor General

**CERTIFICATE OF SERVICE**

I certify that on May 3, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Henry C. Whitaker*
Solicitor General
