# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

ANDREW WARREN,

*Plaintiff-Appellant,*

v.

RON DESANTIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Florida
No. 4:22-cv-302-RH-MAF

# PLAINTIFF-APPELLANT'S SUPPLEMENTAL BRIEF

David A. O'Neil
DEBEVOISE & PLIMPTON, LLP
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

Samantha B. Singh
Marisa L. Pagán-Figueroa
Jane Tien
DEBEVOISE & PLIMPTON, LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
sbsingh@debevoise.com
mlpaganfigueroa@debeovise.com
jtien@debevoise.com

Jean-Jacques Cabou
Alexis E. Danneman
PERKINS COIE LLP
2901 N. Central Avenue,
Suite 2000
Phoenix, Arizona 85012
(602) 351-8000
JCabou@perkinscoie.com
ADanneman@perkinscoie.com

David B. Singer
Matthew T. Newton
OLDER LUNDY KOCH &
MARTINO
1000 W. Cass St.
Tampa, FL 33606
(813) 254-8998
dsinger@olderlundylaw.com
mnewton@olderlundylaw.com

*Counsel for Plaintiff-Appellant Andrew Warren*

# CERTIFICATE OF INTERESTED PERSONS

Plaintiff-Appellant certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Aaron, Jeffrey M., *Attorney for Defendant-Appellee*

2. Allen, Norton & Blue, P.A., *Attorneys for Amicus Curiae*

3. Araiza, William, *Amicus Curiae*

4. Bailey, Andrew, *Amicus Curiae*

5. Cabou, Jean-Jacques, *Attorney for Plaintiff-Appellant*

6. Calvert, Clay, *Amicus Curiae*

7. Cameron, Daniel, *Amicus Curiae*

8. Carr, Christopher M., *Amicus Curiae*

9. Casselman, Margo R., *Attorney for Plaintiff-Appellant*

10. Chemerinsky, Erwin, *Amicus Curiae*

11. Christmas, Natalie, *Attorney for Defendant-Appellee*

12. Costello, David M., *Attorney for Defendant-Appellee*

13. Danneman, Alexis, *Attorney for Plaintiff-Appellant*

14. Debevoise & Plimpton, LLP, *Attorneys for Plaintiff-Appellant*

15. DeSantis, Ron, *Defendant-Appellee*

16. DeSousa, Jeffrey P., *Attorney for Defendant-Appellee*

17.  Evans, Robert Wayne, *Attorney for Amicus Curiae*

18.  Fitch, Lynn, *Amicus Curiae*

19.  Florida Office of the Attorney General, *Attorneys for Defendant-Appellee*

20.  Florida Police Chiefs Association, *Amicus Curiae*

21.  Florida Prosecuting Attorneys Association, *Amicus Curiae*

22.  Florida Sheriffs Association, *Amicus Curiae*

23.  Flowers, Benjamin M., *Amicus Curiae*

24.  Gilles, Susan M., *Amicus Curiae*

25.  Gray Robinson, P.A., *Attorneys for Defendant-Appellee*

26.  Griffin, Tim, *Amicus Curiae*

27.  Grouev, Zachary, *Attorney for Defendant-Appellee*

28.  Hilgers, Michael T., *Amicus Curiae*

29.  Hinkle, Robert L., *District Court Judge*

30.  Hufford, Axel J., *Attorney for Amicus Curiae*

31.  Jackley, Marty, *Amicus Curiae*

32.  Jacobs, Arthur Ivan, *Attorney for Amicus Curiae*

33.  Jenner & Block LLP, *Attorneys for Amicus Curiae*

34.  Keller, Zachery P., *Amicus Curiae*

35.  Knudsen, Austin, *Amicus Curiae*

36. Kobil, Daniel T., *Amicus Curiae*

37. Lagos, Benjamin M., *Attorney for Amicus Curiae*

38. Lakier, Genevieve, *Amicus Curiae*

39. Landry, Jeff, *Amicus Curiae*

40. Levesque, George T., *Attorney for Defendant-Appellee*

41. Li, Yao, *Attorney for Amicus Curiae*

42. Lopez, Susan, *Interested party*

43. Marsey, John David, *Attorney for Amicus Curiae*

44. Marshall, Steve, *Amicus Curiae*

45. Massaro, Toni M., *Amicus Curiae*

46. Moody, Ashley, *Attorney for Defendant-Appellee*

47. Morrisey, Patrick, *Amicus Curiae*

48. Newton, Matthew T., *Attorney for Plaintiff-Appellant*

49. Niehoff, Leonard M., *Amicus Curiae*

50. Older, Lundy, Koch & Martino, *Attorneys for Plaintiff-Appellant*

51. O'Neil, David A., *Attorney for Plaintiff-Appellant*

52. Pagan-Figueroa, Marisa L., *Attorney for Plaintiff-Appellant*

53. Paxton, Ken, *Amicus Curiae*

54. Percival, James H., *Attorney for Defendant-Appellee*

55. Perkins Coie LLP, *Attorneys for Plaintiff-Appellant*

56.     Public Rights Project, *Amicus Curiae*

57.     Reyes, Sean D., *Amicus Curiae*

58.     Rosenthal, Joshua, *Attorney for Amicus Curiae*

59.     Rumberger Kirk & Caldwell, P.A., *Attorney for Amicus Curiae*

60.     Schenck, Robert S., *Attorney for Defendant-Appellee*

61.     Singer, David B., *Attorney for Plaintiff-Appellant*

62.     Singh, Samantha B., *Attorney for Plaintiff-Appellant*

63.     Tien, Jane, *Attorney for Plaintiff-Appellant*

64.     Torres-Spelliscy, Ciara, *Amicus Curiae*

65.     Turret, Erica S., *Attorney for Amicus Curiae*

66.     Unikowsky, Adam G., *Attorney for Amicus Curiae*

67.     Warren, Andrew, *Plaintiff-Appellant*

68.     Whitaker, Henry C., *Attorney for Defendant-Appellee*

69.     Wilson, Alan, *Amicus Curiae*

70.     Wynbrandt, Kathryn L., *Attorney for Amici*

71.     Yost, Dave, *Amicus Curiae*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated:  May 3, 2024          **DEBEVOISE & PLIMPTON LLP**

*/s/ David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant
Andrew Warren*

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................1

I.     The Constitution and Federal Statutes Provide Jurisdiction Over This

       Case.............................................................2

II.    *Walton* Has No Relevance to This Court's Jurisdiction..................6

III.   Adopting the Governor's Position Would Invalidate Many Federal

       Statutes and Overrule Innumerable Decisions ..............11

CONCLUSION ....................................................15

# TABLE OF AUTHORITIES

| Cases | Page(s) |
| --- | --- |

*Atlas Life Ins. Co. v. W. I. Southern, Inc.*,
306 U.S. 563 (1939)..................................................................7

*Baker v. Carr*,
369 U.S. 186 (1962)...............................................................3, 8

*Bell v. Hood*,
327 U.S. 678 (1946)..................................................................4

*Bond v. Floyd*,
385 U.S. 116 (1966).........................................................*passim*

*Felder v. Casey*,
487 U.S. 131 (1988)..................................................................3

*Gardner v. Broderick*,
392 U.S. 273 (1968)..................................................................5

*Givhan v. Western Line Consol. Sch. Dist.*,
439 U.S. 410 (1979)..................................................................5

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999)...............................................................2, 9

*In re Sawyer*,
124 U.S. 200 (1888)...............................................................8, 9

*Jannetta v. Cole*,
493 F.2d 1334 (4th Cir. 1974) ...............................................11

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)..........................................................1, 5, 12

*Lane v. Cent. Ala. Cmty. Coll.*,
772 F.3d 1349 (11th Cir. 2014) ........................................10, 12

*Larsen v. Senate of Commonwealth of Pa.*,
152 F.3d 240 (3d Cir. 1998) ...................................................13

*Maine v. Thiboutot*,
    448 U.S. 1 (1980) ..............................................................................................15

*Melo v. Hafer*,
    912 F.2d 628 (3d Cir. 1990) ..........................................................................4, 5

*Mitchum v. Foster*,
    407 U.S. 225 (1972)....................................................................................2, 3, 10

*Moody v. Bd. of Tr. of Univ. of Ala.*,
    2017 WL 2984879 (N.D. Ala. July 13, 2017) .................................................11

*Murphy v. State of Ark.*,
    127 F.3d 750 (8th Cir. 1997) ...........................................................................10

*Muzquiz v. City of San Antonio*,
    520 F.2d 993 (5th Cir. 1975) ...........................................................................11

*Parker v. Merlino*,
    646 F.2d 848 (3d Cir. 1981) ............................................................................13

*Patsy v. Bd. of Regents*,
    457 U.S. 496 (1982).............................................................................................3

*Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985)...........................................................................................10

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968).............................................................................................5

*Quern v. Jordan*,
    440 U.S. 332 (1979)..........................................................................................15

*Rankin v. McPherson*,
    483 U.S. 378 (1987).....................................................................................5, 10

*United States v. Castro*,
    837 F.2d 441 (11th Cir. 1988) ....................................................................14, 15

*United States v. Gonzales*,
    520 U.S. 1 (1997) .............................................................................................15

*Walton v. House of Representatives*,
265 U.S. 487 (1924).............................................................................*passim*

*Will v. Michigan Dept. of State Police*,
491 U.S. 58 (1989)..........................................................................4

**Statutes**

42 U.S.C. § 1983 ...........................................................................2, 3

42 U.S.C. § 1343(3) .......................................................................1,2

42 U.S. Code § 2000e–5 ...............................................................12

Age Discrimination in Employment Act, 29 U.S.C. § 630(f) ...............................14

Americans with Disability Act, 42 U.S.C. §§ 12111–12117 ...........................12, 14

Judiciary Act of 1789, § 1 et seq., 1 Stat. 73 ..................................1, 6, 7

**Other Authorities**

Sandra Day O'Connor, <u>The Judiciary Act of 1789 and the American
Judicial Tradition</u>, 59 U. Cin. L. Rev. 1 (1990)...................................7

U.S. Const. art. III ..........................................................................1, 2

**INTRODUCTION**

This Court asked the parties to address how or whether this Court's jurisdiction is affected by *Walton v. House of Representatives*, 265 U.S. 487 (1924), and *Bond v. Floyd*, 385 U.S. 116 (1966). The answer is clear and straightforward: The panel correctly exercised jurisdiction in its January ruling.

*Bond* confirms that this Court has jurisdiction. That case was just like this one: An elected state official sued under 42 U.S.C. §§ 1983 and 1343(3) seeking reinstatement as a remedy for the violation of his First Amendment rights. The Supreme Court squarely held that it had jurisdiction over the case and ordered the requested relief. *See Bond*, 385 U.S. at 131, 137. For decades and in countless cases, federal courts at every level have similarly exercised jurisdiction over actions brought under Section 1983 by wrongfully terminated state officials. *See infra* Part II. The Supreme Court ruled for a state official in such a case two Terms ago. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 544 (2022).

*Walton* is irrelevant. It addresses only the traditional scope of equity jurisdiction in the English Court of Chancery, the historical practices of which Congress adopted in the Judiciary Act of 1789. *See Walton*, 265 U.S. at 490; *see also* Judiciary Act of 1789, § 1 et seq., 1 Stat. 73. Congress has the constitutional power to expand the jurisdiction of federal courts beyond that initial statute, *see* U.S. Const. art. III, and has in fact done so many times in subsequent laws.

Section 1983 and its accompanying jurisdictional grant, Section 1343(3), are the quintessential examples. Section 1983 was intended to open the federal courts to "any citizen," including state officers, whose constitutional rights have been violated under color of state law. *See* 42 U.S.C. § 1983. "Congress plainly authorized the federal courts to issue injunctions in [Section] 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). *Walton* has no bearing where, as here, jurisdiction is premised not on "the Court's general equitable powers under the Judiciary Act of 1789, but its powers under the statute authorizing" the requested relief. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,* 527 U.S. 308, 326 (1999).

## I.    The Constitution and Federal Statutes Provide Jurisdiction Over This Case

The judicial power of the United States, and thus the constitutional jurisdiction of this Court, extends to "all Cases, in Law and Equity, arising under [the] Constitution, [or] the Laws of the United States." U.S. Const. art. III, § 2, cl. 1. Mr. Warren's suit for violation of his First Amendment rights arises not only under the Constitution but also under a federal law that specifically grants the federal courts jurisdiction over claims like this one in which state actors, under color of state law, have deprived a citizen of his constitutional rights. *See* 42 U.S.C. § 1983; *see also* Dkt. 40 at 36, Complaint. "Since the complaint plain[l]y

2

sets forth a case arising under the Constitution, the subject matter is within the federal judicial power defined in Art. III, § 2, and so within the power of Congress to assign to the jurisdiction of the District Courts.  Congress has exercised that power[.]"  *Baker v. Carr,* 369 U.S. 186, 200 (1962).

"The very purpose of [Section] 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial."  *Mitchum*, 407 U.S. at 242 (internal citations omitted).  "The 1871 Congress intended," through Section 1983, "to throw open the doors of the United States courts to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights."  *Patsy v. Bd. of Regents*, 457 U.S. 496, 504 (1982) (internal citations omitted).  Section 1983 "assigned to the federal courts a paramount role," *id.* at 503, by creating "a uniquely federal remedy against incursions upon rights secured by the Constitution and laws of the Nation."  *Felder v. Casey*, 487 U.S. 131, 139 (1988) (internal citations omitted).  As to the nature of that remedy and the relief it permits, the Supreme Court has explicitly confirmed that "[i]n carrying out [Section 1983], Congress plainly authorized the federal courts to issue injunctions in [Section] 1983 actions."  *Mitchum*, 407 U.S. at 242.

Indeed, as the Supreme Court has emphasized, "it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the state to do." *Bell v. Hood*, 327 U.S. 678, 684 (1946). Section 1983 ensures that "where federally protected rights have been invaded . . . and a federal statute provides for a general right to sue for such invasion, federal courts may use *any available remedy* to make good the wrong done." *Id*. (emphasis added).

Against this background, it is no surprise that in the specific context of this case—a state officer unlawfully ousted from his post in retaliation for the exercise of his First Amendment rights—the Supreme Court has confirmed that successful plaintiffs are entitled to injunctive relief requiring their reinstatement. Most conspicuously, as the panel opinion explained, Dkt. 89-1 at 28–29, 32–33, 58, and as this Court's Order directing this brief recites, Dkt. 111 at 2, the Supreme Court exercised its Section 1983 authority in *Bond v. Floyd* to accomplish precisely what Mr. Warren asks here: restoration of an elected official to the position from which he was wrongfully removed because of his protected speech. *See also, e.g.*, *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (holding that the Supreme Court's decision in *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), "supports maintenance of a section 1983 claim against a state official for reinstatement"

brought by a plaintiff unlawfully ousted from a state job because of political beliefs), *aff'd*, 502 U.S. 21 (1991).

With this action, Mr. Warren joined a long list of individuals who have turned to the federal courts for help when illegal acts by state officials under color of state law have violated the Constitution. *See e.g.*, *Kennedy*, 597 U.S. at 543 (holding the Constitution does not "tolerate[]" the "punish[ment of] an individual for engaging in a . . . personal religious observance"); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 565 (1968) (holding that a public school teacher's "rights to freedom of speech were violated" by the school's decision to dismiss him); *Gardner v. Broderick*, 392 U.S. 273, 279 (1968); *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 417 (1979)); *Rankin v. McPherson*, 483 U.S. 378, 392 (1987) (holding that a public official's rights under the First Amendment "outweighed" the state's interest in discharging her).

As Congress intended, the doors of the federal courts are open to Mr. Warren and his claims for injunctive relief, just as they were to Professor Julian Bond after he was unconstitutionally kept from his elected office because of his speech against the Vietnam War, *see Bond*, 385 U.S. at 137, and just as they were, in a more recent First Amendment case, to Coach Joseph Kennedy after he was unconstitutionally suspended by a public school district for his post-game prayers. *See Kennedy*, 597 U.S. at 544.

5

## II.  *Walton* **Has No Relevance to This Court's Jurisdiction**

The Order directed the parties to address the import of the statement in *Walton* that federal courts "sitting as courts of equity, [are] without jurisdiction over the appointment and removal of state officers." Dkt. 111 at 2.  *Walton* is irrelevant to this case.  That decision concerns only the equitable remedies historically available under the Judiciary Act of 1789, which granted federal courts the traditional "jurisdiction" of English courts of equity.  *See* Judiciary Act of 1789, § 1 et seq., 1 Stat. 73.  *Walton* has no bearing on a suit brought pursuant to different federal statutes in which Congress, exercising its constitutional authority under Article III and the Fourteenth Amendment, specifically granted this Court both subject matter jurisdiction and the power to issue injunctive relief.

*Walton* is not a decision about the constitutional subject-matter jurisdiction of the federal courts or the limits of congressional authority.  It is instead an interpretation of a federal statute that is not at issue here:  the Judiciary Act of 1789.  The plaintiff in *Walton* sought various writs pursuant to the traditional equitable authority of a pre-merger federal court "sitting in equity."  *See* Brief for Appellant at 17–20, *Walton v. House of Representatives of State of Okl.*, 265 U.S. 487 (1924) (No. 689); *see also* Bill of Complaint at 11–12, *Walton v. House of Representatives of State of Okl.*, 265 U.S. 487 (1924).  In the absence of another statute granting broader jurisdiction, that baseline equitable power is a function of

6

the Judiciary Act of 1789 in which Congress organized the federal courts and conferred on them a more limited power than the Constitution permitted. *See* Sandra Day O'Connor, <u>The Judiciary Act of 1789 and the American Judicial Tradition</u>, 59 U. Cin. L. Rev. 1, 2–3 (1990) (noting that in the Judiciary Act of 1789, "Congress vested only a small portion of the jurisdiction permitted by Article III" in the federal courts).

With respect to "suits . . . in equity," § 11, 1 Stat. 78, the Judiciary Act of 1789 defined the court's authority by reference to historical practices in England. "The jurisdiction thus conferred" by the Judiciary Act of 1789 was "an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." *Atlas Life Ins. Co. v. W. I. Southern, Inc.*, 306 U.S. 563, 568 (1939) (internal citations omitted).

Thus, when the Supreme Court stated in *Walton* that federal courts, "sitting as courts of equity, [are] without jurisdiction over the appointment and removal of state officers," the Court did not in any sense hold that federal courts could not constitutionally adjudicate such disputes. *See Walton*, 265 U.S. at 490. Rather, the Court held only that the English Court of Chancery had not historically heard such cases at the time of the Founding and therefore that the Judiciary Act of 1789 did not encompass them. *See id.*

7

The Supreme Court has discussed *Walton* only a single time in the century

since it was decided, and that reference confirms *Walton*'s irrelevance to this case.

In *Baker* v. *Carr*, 369 U.S. 186 (1962), the Court held that disputes implicating the

political processes of state governments are not immune from federal-court review

on jurisdiction or justiciability grounds.  Rejecting the argument that federal courts

cannot hear such matters, the Court explained:

> We have not overlooked such cases as *In re Sawyer*, 124
> U.S. 200, and *Walton v. House of Representatives*, 265
> U.S. 487, which held that federal equity power could not
> be exercised to enjoin a state proceeding to remove a
> public officer.  But these decisions explicitly reflect only
> a traditional limit upon equity jurisdiction, and not upon
> federal courts' power to inquire into matters of state
> governmental organization.

*Id.* at 231.[1]

The "traditional limit upon equity jurisdiction" that *Walton* described is not

the constitutional limit of Article III jurisdiction.  *Id.*  Congress may expand the

jurisdiction and authority of the federal courts beyond that of the English Courts of

Chancery.  The cases on which *Walton* is based say so explicitly.  As the Supreme

Court explained in *In re Sawyer*, a court of equity traditionally "has no

---

[1]  Mr. Warren does not construe the Court's order to request briefing on the
separate question of justiciability.  As the district court correctly observed, the
Governor has already conceded that this case is justiciable and does not present
a "political question."  Dkt. 40 at 1246, District Court Opinion (citing Dkt. 40
at 1215, Tr. Trans. (Governor's counsel stating "we're not contending that this
is a political question that this is unreviewable")).

jurisdiction . . . over the appointment and removal of public officers"—"*unless enlarged by express statute*."  124 U.S. 200, 210 (1888) (emphasis added).

That same basic principle—that Congress may choose to expand the equity power beyond historical practice—is also the fundamental premise of *Grupo Mexicano*.  527 U.S. 308.  In that case, the Court held a particular type of injunction impermissible "[b]ecause such a remedy was historically unavailable from a court of equity."  *Id*. at 333.  That historical analysis was relevant, however, only because the case involved "the Court's general equitable powers under the Judiciary Act of 1789, [not] its powers under a statute authorizing issuance of [such] injunctions." *Id.* at 326.  Justice Scalia, writing for the Court, emphasized multiple times that Congress was free to pass legislation granting federal courts the power to issue the disputed remedy.  *See id.* at 322 ("When there are indeed new conditions that might call for a wrenching departure from past practice, Congress is in a much better position than we both to perceive them and to design the appropriate remedy."); *id.* at 333 ("The debate concerning this formidable power over debtors should be conducted and resolved where such issues belong in our democracy:  in the Congress.").

As explained above, Mr. Warren's case does not involve the traditional equitable powers of the English Court of Chancery pursuant to the Judiciary Act of 1789.  Rather, it rests on the specific statutes he cited in his complaint:  Section

1983 and its corresponding jurisdictional grant, Section 1343. *See* Dkt. 40 at 36, Complaint. Those statutes, not the Judiciary Act of 1789, therefore govern. *See Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("Where a statute specifically addresses the particular issue at hand, it is that authority, and not the [Judiciary Act of 1789], that is controlling."); *Grupo Mexicano*, 527 U.S. at 326 (distinguishing cases in which the plaintiff sued under a statute authorizing the relief sought).

"Congress plainly authorized the federal courts to issue injunctions in [Section] 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress." *Mitchum*, 407 U.S. at 242. And decades of precedents from the Supreme Court, this Court, and every other federal court of appeals make clear that the injunctive relief Section 1983 includes reinstatement of state officials as a remedy for violation of First Amendment rights. The Supreme Court's decision in *Bond*, ordering the reinstatement under Section 1983 of an elected state officer like Mr. Warren, is only one of many examples. *See, e.g.*, *Rankin*, 483 U.S. 378 (affirming state employee's Section 1983 claim and finding her dismissal violated the First Amendment); *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1350 (11th Cir. 2014) (reversing prior denial of state community college employee's Section 1983 claim for reinstatement); *Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997) (permitting a former state employee's Section 1983 claim for reinstatement);

*Jannetta v. Cole*, 493 F.2d 1334 (4th Cir. 1974) (ordering the reinstatement of a wrongfully dismissed fireman following his Section 1983 suit); *Moody v. Bd. of Tr. of Univ. of Ala.*, 2017 WL 2984879 at *6 (N.D. Ala. July 13, 2017) (denying dismissal of plaintiff's Section 1983 claim seeking reinstatement). This Circuit resolved the issue nearly 50 years ago, noting that "the remedy of reinstatement" of a state official under Section 1983 "is of course permissible." *Muzquiz v. City of San Antonio*, 520 F.2d 993, n.18 (5th Cir. 1975), *on reh'g*, 528 F.2d 499 (5th Cir. 1976), *vacated on other grounds*, 438 U.S. 901 (1978).

Congress thus provided this Court both jurisdiction over this case and authority to order Mr. Warren's reinstatement.

## III. Adopting the Governor's Position Would Invalidate Many Federal Statutes and Overrule Innumerable Decisions

The Governor appears to contend that federal courts are forever limited to the traditional practices of the English Court of Chancery, even if Congress has passed a statute granting broader authority. Opp. Brief, Dkt. 53 at 50–52. Not only is that position egregiously incorrect and foreclosed by the very cases on which the Governor relies, but it also would abrogate dozens of federal laws, overrule decisions of this Court, and contradict numerous Supreme Court cases, including decisions issued within the last two years.

Many federal statutes grant federal courts the authority to issue injunctive relief that was not encompassed under the Judiciary Act of 1789. Consider, for example, the effect of adopting the Governor's position on just the specific issue involved here: whether Congress may grant federal courts jurisdiction over suits by state officials seeking reinstatement. Were the answer no, Section 1983 would be only the most prominent of any number of federal statutes that would be rendered unconstitutional as applied to state employees. *See also, e.g.*, Title I of the Americans with Disability Act, 42 U.S.C. §§ 12117, 2000e-5(f)(3), (g)(1) (granting federal courts jurisdiction to hear suits to redress discrimination against state employees through "equitable relief . . . which may include, but is not limited to, reinstatement").

And that would just be the start of the shock wave such a ruling would unleash. Hundreds—likely thousands—of federal judicial decisions have considered or ordered reinstatement of state officials on the basis of statutes in which Congress expanded the courts' traditional equity powers. The Supreme Court's decision in *Bond*, of course, would be rendered invalid, as would many of this Court's rulings. *See, e.g.*, *Lane*, 772 F.3d at 1351 (upholding federal court authority to order "equitable relief in the form of reinstatement" to a state employee under Section 1983). So would the Supreme Court's recent decision in *Kennedy*, upholding a First Amendment claim brought under Section 1983 by a

12

public high school football coach who sought only the equitable relief of a declaratory judgment and reinstatement. The Federal Reports are full of similar cases. *See supra* at 5, 10–11.

There is no basis to distinguish these decisions; either the Governor is wrong, or the federal courts (including the Supreme Court) have been hearing suits by state officials seeking reinstatement without jurisdiction for decades. Surely it is no answer that the precedents involved lower-level state employees who were not "state officers" within the meaning of *Walton*. *Bond* directly refutes any such distinction; the individual whom the Supreme Court ordered reinstated in that case was an elected state official just like Mr. Warren. Other courts of appeals have also held that Section 1983 suits brought by elected officials are squarely within federal jurisdiction. *See, e.g.*, *Parker v. Merlino*, 646 F.2d 848, 852 (3d Cir. 1981) ("Any suggestion that the federal courts are without jurisdiction to consider" a suit brought by state elected officials "is completely without merit"); *Larsen v. Senate of Commonwealth of Pa.*, 152 F.3d 240, 248 (3d Cir. 1998) ("We reject the Senators' argument that respect for the sovereignty of the state requires us to decline to exercise our jurisdiction . . . . [T]he overriding fact is that the Fourteenth Amendment and § 1983 were intended to radically alter the distribution of power between the federal government and the states.").

Basic principles of statutory construction similarly prohibit any contention that Congress did not extend to all state officials the expanded equitable powers it created in Section 1983. Congress knows how to exclude "policymakers" or elected officials from the scope of equitable relief when it intends to do so. In the Age Discrimination in Employment Act, for example, Congress specified that covered "employees"

> shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f). Congress has chosen not to include such a carve-out in other legislation that grants injunctive remedies to state employees. *See, e.g.*, 42 U.S.C. §§ 12111(2); (5)(a) (defining "covered entity" and "employer" without similar qualifications). And to state the obvious, Congress did not so limit Section 1983. That law applies by its terms to "any citizen of the United States or other person within the jurisdiction thereof." As the Supreme Court and this Court have held for decades, "any citizen" includes all state officials—whether an elected representative or a football coach—who, like Mr. Warren, have been suspended, removed, or terminated in violation of their constitutional rights. *See United States v. Castro*, 837 F.2d 441, 445 (11th Cir. 1988) (Congress uses the word "'any' . . .

14

to mean 'every' and 'all'"); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"). It would be extraordinary and anomalous to infer some unstated qualifier on the word "any," particularly in light of the manifest purpose of Section 1983 "to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Maine v. Thiboutot*, 448 U.S. 1, 5 (1980); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) ("There is no question that both the supporters and opponents of the Civil Rights Act of 1871 believed that the Act ceded to the Federal Government many important powers that previously had been considered to be within the exclusive province of the individual States.").

## CONCLUSION

This Court has jurisdiction over this case, and its mandate should issue forthwith.

Dated: May 3, 2024        Respectfully submitted,

<div style="margin-left: 40%;">

**DEBEVOISE & PLIMPTON LLP**

*/s/ David A. O'Neil*

David A. O'Neil
801 Pennsylvania Ave. NW, Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant*
   *Andrew Warren*

</div>

15

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This brief complies with the type-volume limitation of the Court's Order at Dkt. 111 because it is 15 pages.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

Date:  May 3, 2024

DEBEVOISE & PLIMPTON LLP

/s/ *David A. O'Neil*

David A. O'Neil

801 Pennsylvania Ave. NW,
Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant*
*Andrew Warren*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2024, the foregoing document was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit via the Court's electronic filing system and served on all counsel of record via CM/ECF.

Date:  May 3, 2024

DEBEVOISE & PLIMPTON LLP

/s/ *David A. O'Neil*

David A. O'Neil

801 Pennsylvania Ave. NW,
Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com

*Counsel for Plaintiff-Appellant*
*Andrew Warren*